THE PEOPLE OF THE STATE OF NEW YORK ex rel. PERCY W. HORTON and Others, Relators, *v.* WILLIAM A. PRENDERGAST and Others, as Commissioners of the Public Service Commission and Another, Respondents.

NIAGARA, LOCKPORT AND ONTARIO POWER COMPANY, Intervenor.

Third Department, May 4, 1927.

Waters and watercourses — certiorari under Conservation Law, § 635-a, to review determination of Public Service Commission made under Conservation Law, § 624, subd. 3, in relation to authorizing corporation defendant to acquire land for water power site — relators claim that there is upon their property waterfall of about twenty-two feet which constitutes " single undeveloped water power site "— relators contend that proceeding should have been under Conservation Law, § 624, subd. 2, relating to development of several water power sites under single plan — Public Service Commission properly determined that single water power site was involved — Conservation Law, § 624, is constitutional.

This is a proceeding under section 635-a of the Conservation Law to review the determination of the Public Service Commission made under subdivision 3 of

section 624 of the Conservation Law finding that the defendant corporation was entitled to condemn land for the purpose of developing an undeveloped water power site, the major part of the head and volume of the usable flow for power at which site is owned by defendant corporation which is engaged in the production of heat, light or power. The evidence supports the findings by the Public Service Commission.

The contention by the relators is that inasmuch as there is on their property a fall of about twenty-two feet constituting what they claim to be a " single undeveloped water power site," making within the premises which the company and the relators together own two separate water power sites on the stream, the proceeding should have been instituted under subdivision 2 of section 624 of the Conservation Law which provides for the development of several water power sites under a single plan for their development together, where they cannot be developed separately as efficiently and economically. This contention cannot be sustained.

Section 624 of the Conservation Law is not unconstitutional on the ground that it deprives the relators of their property without due process of law or deprives them of the equal protection of the law.

The State has the power to authorize the exercise of eminent domain where the property is to be put to a public use and the Legislature may limit the exercise of that power, as in this case, to a corporation owning a major part of the head and volume of the usable flow of a stream at a proposed water power site.

CERTIORARI ORDER authorized by section 635-a of the Conservation Law (as added by Laws of 1922, chap. 242) granted out of the Supreme Court on the 14th day of February, 1925, directed to William A. Prendergast, commissioner of the Public Service Commission of the State of New York, and chairman thereof, and others, as commissioners of the Public Service Commission, and the Public Service Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in reference to the application of the Niagara, Lockport and Ontario Power Company, under subdivision 3 of section 624 of the Conservation Law, relating to the condemnation of certain property.

The opinion of the Public Service Commission is reported in *Matter of Niagara, Lockport & Ontario Power Co.* (32 State Dept. Rep. 211).

*Morehouse & Morehouse* [*Bertram F. Willcox, Delos M. Cosgrove* and *D. P. Morehouse* of counsel], for the relators.

*Purcell, Cullen & Pitcher* [*Francis E. Cullen, Henry W. Killeen* and *Warren Tubbs* of counsel], for the intervenor, Niagara, Lockport and Ontario Power Company.

VAN KIRK, Acting P. J. The Conservation Law (§ 624, added by Laws of 1921, chap. 579, as amd. by Laws of 1922, chap. 242) provides as follows: " Real property may be acquired pursuant to

this article under an exercise of the right of eminent domain in the following cases:

" 1.  *  *  *.  2.  *  *  *.

" 3. Real property, on the application of a corporation organized for the production of heat, light or power, after a determination by the Public Service Commission that such property is necessary to the full development and utilization of a single undeveloped water power site, a major part of the head and volume of the usable flow for power at which site is owned by such corporation, for the production of heat, light or power for sale or distribution to the public and that such heat, light or power is necessary for public use.  *  *  * Ownership in other lands [lands not in the forest preserve] wherever located shall be presumed on showing record title in the applicant for a period of twenty years and possession thereunder for a like period. Such right of eminent doman shall be exercised under the Condemnation Law subject to the following restrictions and limitations: " (only one of which, below mentioned, is claimed to apply to this case).

This is not a condemnation proceeding. It is a proceeding before the Public Service Commission for its determination as to the matters in the above statute set forth, which determination is a condition precedent to the condemnation proceeding provided for in the statute. The Public Service Commission determined and certified as follows:

" 1. That the petitioner is a corporation organized for the production of heat, light or power.

" 2. That all of the real property set out on the map, Exhibit C, filed with the petition herein, constitutes a single undeveloped water power site.

" 3. That the petitioner is the owner of the lands and rights constituting the major part of the head and volume of the usable flow for power at said site.

" 4. That the real property set out on said map, Exhibit C, shaded in yellow and south of the highway shown on said map is necessary for the full development and utilization of said single undeveloped water power site for the production of heat, light or power for sale or distribution to the public.

" 5. That the light, heat or power to be produced at said site is necessary for public use."

This determination covers all the questions to be determined under the statute and each separate finding is supported by the evidence.

The relators contend that this proceeding should have been

instituted under subdivision 2 of section 624 rather than subdivision 3. The latter provides for the development " of a single undeveloped water power site." The former involves the development of several " water power sites " ·under a single " plan for their development together," where they "cannot be developed separately as efficiently and economically," and provides as follows: " Real property which is necessary to the full development of water power sites where such water power sites on a stream, or in a given locality cannot be developed separately as efficiently and economically for the generation of power as under a plan for their development together and the owner or owners of the right to the use of the greater part of the head and volume of usable flow for power at such sites, transfer the same to a corporation organized for the production, sale and distribution of heat, light and power to the public as herein provided, or such right is owned by such a corporation and the Commission determines by resolution that such power sites can be more efficiently and economically developed for the production of power under such a plan than singly, and the heat, light or power is necessary for public use." The relators claim that there is upon their property a fall or about twenty-two feet and that this constitutes a " single undeveloped water power site," making within the premises which the company (Niagara, Lockport and Ontario Power Company) and the relators together own, two separate water power sites on the stream, and so the proceeding should have been taken under subdivision 2. We cannot accept this view. A petition under subdivision 2 must run to the Water Power Commission; under subdivision 3 to the Public Service Commission. It must be presumed that the Legislature intended that each subdivision applies to a distinct condition; that, in application, one subdivision would not overlap the other; that it was not intended that a major part owner should have an arbitrary choice as to the subdivision under which it should proceed.

There are some collateral considerations which may be helpful if had in mind in construing these subdivisions:

(1) The exception above referred to in section 624, subdivision 3, is found in paragraph (b). It provides in substance that the owner of a power ·site, which is taken under subdivision 2, may elect to have and own, in lieu of compensation, a proportionate part of the power due to the common development, provided he pays his proportionate share " of the cost of development, maintenance and operation " and provided also that he " assents to such reasonable and equitable provisions and regulations in relation to the development and operation thereof for the common benefit and to payment therefor as the Commission shall prescribe." In this provision there is

rich ground for constant dispute and expensive litigations in respect to the policy of development, maintenance, improvements and to the accounts thereof kept. Under subdivision 2 a corporation is to be organized by the owners of the major part of the stream, but a minor owner, as an individual, is to own a part of the power after development; a kind of partnership between a corporation, and an individual. For the best interest of the parties there should be no special effort to bring a case within subdivision 2, when under subdivision 3 a minor part owner may secure compensation for his property at the price of its most valuable use, namely, for water power; if he has a valuable power, the taker must pay for it. Thus he is fully recompensed and avoids conditions likely to produce trouble and expense.

(2) A storage reservoir is a most valuable adjunct of a water power and is necessary in order to realize the full power of the stream during winter and summer.

(3) Water power is thought to furnish the cheapest and most desirable means of developing electrical energy. Fuel supplies are becoming more costly and are subject to earlier exhaustion than is water power. The purpose of the Conservation Law with respect to water powers was to preserve and develop this productive power to answer the necessities of the future; and it was intended that the ownership of the powers should be in the hands of corporations which should be controlled by State agencies so that necessities may not breed extortion, discrimination or waste.

We turn then more directly to the meaning of the statute. Both subdivision 2 and subdivision 3 refer to major and minor part ownership of the head and useful flow of a stream. Both, therefore, must contemplate the possibility that each of two or more owners along a stream may have a sufficient head and flow of the stream to furnish a water power. It is apparent, therefore, that, in the application of the two subdivisions, the distinction is not to be found in the number of possible water power sites involved. In our view a clear distinction is found in the definition of "water power site" (Conservation Law, § 610, subd. 5, added by Laws of 1921, chap. 579, as amd. by Laws of 1922, chap. 242) as follows: It "means the real property including rights appurtenant thereto or which may become appurtenant thereto which, when a water power is developed, is necessary or useful for the construction, maintenance and operation of a plant for the use of a fall of water for the generation of power." Water power development necessarily involves the construction of a dam in a stream to the end that a pond or reservoir may be had. These necessarily require the overflow of shore lands and the deepening of the water in the natural stream.

The parts of the lands adjoining the stream and in the stream which thus are covered, or more deeply covered, with water become appurtenances of the developed water power site and are necessary for the full use of the water for the generation of power. When a water power is developed that which is flowed by its reservoir or pond is a part of a single power and within subdivision 3 is property which the Public Service Commission may find is necessary to the full development and utilization of a single undeveloped water power site. The fact that within the coverage of such a reservoir there may be upon the lands of a minor part owner a sufficient head and useful flow of the stream to justify a lesser development does not bring the case within subdivision 2. That lesser head and flow is one of the appurtenances which may be taken for the advantage of the greater single development. It is well known and is established in this record that a single fall of fifty feet will develop a much greater power than will three falls each of sixteen and two-thirds feet, or two falls each of twenty-five feet. With a given flow or quantity of water the power increases by a progressive ratio as the head increases. On many streams there is a gradual fall for a long distance. Thus on each of several successive properties on the stream there may be a sufficient fall for a valuable water power. But a "water power site" is more than such a potential water power; there must exist a suitable site for a dam and reservoir; and this requires the right kind of physical conditions on either side of the stream — high lands to which to tie the dam on both sides of the stream with the space between narrow enough for construction at a reasonable cost. It may be impossible, or impractical, on account of the physical conditions and the large cost of acquiring the lands which will be flowed, to develop the full power of the stream with one dam and reservoir, that is by the development of a single water power site; that in fact several such developments would be necessary in order to enjoy that full power. At the same time such a stream might be developed under a single plan, constructing several dams and preserving the fuller effect of the head by trunks to conduct the water from one dam to a lower power house. The development under such circumstances would come under subdivision 2. Therefore, our conclusion is that the Public Service Commission was justified in making its second and fourth findings above quoted.

The questions raised by the relators as to title and ownership we think do not require discussion (See § 624, subds. 3, 5, as amd. *supra*) and their claim that they own an island up stream from the proposed site and, therefore, an interest in the head and usable waters of the stream raises no question material here. The pond

to be created by the proposed development will not extend to the island.

This brings us to the constitutionality of section 624. The relators invoke the due process of law and the equal protection of the law provisions of the Federal and State Constitutions. (U. S. Const. 14th Amendt. § 1; State Const. art. 1, § 6.) The company, defendant here, already has prosecuted to judgment the appropriate condemnation proceeding. (*Matter of Niagara, Lockport & Ontario Power Co.*, 125 Misc. 269.) While that judgment must be reviewed in the Fourth Department and while in the instant matter none of the relators' property has been or could be taken, still the relators claim that the entire act is unconstitutional; that in consequence these proceedings cannot be maintained and that the constitutional questions should be passed upon in this court. We, therefore, will briefly express our views.

The respondent company was organized for the purpose of generating and distributing electrical energy for light, heat and power for public and private purposes within described territory. It is, and has been, engaged in this business. It has been merged or consolidated with certain transportation corporations and comes within the jurisdiction of the Public Service Commission. It acquires its electrical energy in part from its own generating plants. It comes within subdivision 3 of section 624 of the Conservation Law.

Does the statute provide due process of law for the taking of property thereunder? The relators appeared before the Public Service Commission. They presented their evidence, were heard in full and determination was made by a tribunal or body constituted and authorized by the Legislature to hear and determine the issues presented. In this branch of the proceeding the due process of law provision of the Constitution has been fully complied with. (*People* v. *Adirondack R. Co.*, 160 N. Y. 225, 238, 241.) Under this statute lands are to be taken in the exercise of the right of eminent domain, a right not conferred upon a government by a constitution or otherwise, but one inherent in sovereignty. It exists as soon as the government is organized and survives as long as the government survives. The Constitution puts limits only upon the exercise of the right. The theory upon which this right is exercised is that the rights of the individual must yield to considerations of public good and the common welfare. (20 C. J. 513–516; *People* v. *Adirondack R. Co.*, 160 N. Y. 225.) The property of all individuals or corporations is held subject to the right of the State in the exercise of the power of eminent domain to appropriate it for the public use. The right may be exercised

directly by the Legislature or through corporate bodies or individuals, to whom the Legislature has delegated the power.   (20 C. J. 533.)   The production of electrical energy for light, heat and power for the use of the public generally is· a public use.   (*Matter of Niagara, Lockport & Ontario Power Co.,* 111 App. Div. 686; *Oneonta Light & Power Co.* v. *Schwarzenbach,* 164 id. 548; affd., 219 N. Y. 588; *Matter of Long Sault Development Co.* v. *Kennedy,* 158 App. Div. 398; affd., 212 N. Y. 1.)   The exercise of this power is due process of law if the established conditions of its exercise are observed.   (20 C. J. 516.)

That the right of eminent domain is allowed to be exercised by a corporation, which has clearly a major part of the head and useful flow of a stream as against a minor holder, is not such a discrimination as deprives the minor holder of equal protection of the law. The Legislature may delegate the power to condemn to a municipality, a private corporation, a transportation corporation, or an individual, if only the use to which the property when condemned is to be put is a public use.   The right here conferred could have been conferred upon strangers as is the case generally where the right has been conferred.   Here there is a limitation; only a corporation which owns the major part of the power of the stream can condemn.   There is here no unequal protection of the law; the rights of the relators yield not to the rights or claims of the majority owners, but to considerations of the public good and common welfare as determined by the Legislature.   The question of the necessity for the exercise of the right of eminent domain is for the Legislature and may not be interfered with by the courts..   (*People* v. *Adirondack R. Co., supra; Matter of Burns,* 155 N. Y. 23, 27.) The question as to whether in any given case the use is public is judicial and must be determined by the courts.   We think this question has been properly determined in this case.

We think the act does not offend against either the Federal or State Constitutions.

The determination of the Public Service Commission should be confirmed, with fifty dollars costs and disbursements.

HINMAN, McCANN, DAVIS and WHITMYER, JJ., concur.

Determination   confirmed,   with   fifty   dollars   costs   and disbursements.