In the Matter of the Application of JAMES P. MAZZONE, Appellant, for Payment of an Award Made in a Condemnation Proceeding Instituted by the City of New York.

DAVID HJORTH et al., Respondents.

Argued April 10, 1939; decided July 11, 1939.

*Samuel Feuer* and *Abraham Kantor* for appellant.

*Merle I. St. John, Morris T. Hamburg* and *Edwin C. Hamburg* for David Hjorth et al., respondents.

*William C. Chanler, Corporation Counsel (Lewis Orgel* and *Julius Isaacs* of counsel), for City of New York, respondent.

RIPPEY, J.   This is a proceeding to determine the ownership of an award made in a street opening condemnation proceeding to unknown owners for Damage Parcel No. 75 taken by the city from Gore Lot No. 69, being twenty-five feet in depth along the northerly line of Bronxwood avenue. An order to condemn the property in question was filed in the office of the clerk of Bronx county on October 25, 1929.   The final decree as to damage and benefit was filed on July 8, 1935, but title to the lands acquired vested in the city of New York on March 2, 1931.   Not only did the final decree provide an award, but assessed against it a benefit to the property remaining after the damage parcel was taken.   In the instant proceeding an order was made at Special Term confirming the report of an official referee directing that the Comptroller of the city of New York pay to James P. Mazzone the full amount of the award with accrued interest without regard to the assessment levied in the proceeding against the premises of which the damage parcel formed a part and without regard to any other taxes, assessments, water charges or other liens which became a lien against the remaining premises subsequent to June 18, 1925.   That order was unanimously reversed by the Appellate Division, which held that the award belonged to a cross-petitioner, Amanda Hjorth, subject to deduction therefrom of the assessment for benefit levied in the proceedings and any other assessment, taxes or other charges that might be liens against the remaining land of which the damage parcel formed a part.

On July 10, 1901, the proper authorities adopted and filed in the proper public office a map of section 32 of the layout of proposed streets for the borough of the Bronx. Among other things, there appeared and was located upon the map a certain Lot G69 on the corner of Fifth street, later Bronxwood avenue, and Corsa lane, later East Two Hundred and Twenty-fifth street, fronting sixty-two and three-tenths feet on Fifth street.   The width of Fifth street was indicated to be fifty feet, as then physically existing.   The map, however, indicated that it was pro-

posed to widen the street to a width of one hundred feet by taking twenty-five feet off of Lot G69 and twenty-five feet from the lot on the opposite side of the street. In 1910 and 1925 other maps were adopted and filed showing the same existing and proposed layout. On February 25, 1925, Mazzone acquired title to the easterly fifty-five feet of Lot G69 and conveyed title thereto by deed to David Hjorth on June 18, 1925. The grantee paid $6,000 on the purchase price of the property and executed and delivered a purchase-money mortgage for $5,000. The deed to Hjorth, which was recorded on June 25, 1925, conveyed the property in fee simple absolute without restriction or reservation. The following clause, however, was contained in the deed: "Excepting, however, that the party of the first part expressly excepts from this conveyance and expressly reserves to himself, his heirs, executors, administrators and assigns any awards or other remuneration that may be made to said premises by the City of New York or other subdivision thereof for the widening of Bronxwood Avenue. And the party of the first part, the grantor, herein expressly reserves the right to claim such awards or remuneration in his own name and right and to commence any action for the recovery of same in his own name and right." By subsequent mesne conveyances title to the property (all of Lot G69) finally vested in the Vitabel Realty Corporation, which was the record owner thereof from December 17, 1927, to May 28, 1935. Each conveyance contained the clause which provided that the right to any condemnation award was reserved to Mazzone. On May 28, 1935, the Vitabel Realty Corporation conveyed the premises remaining after the widening of Bronxwood avenue to Amanda Hjorth, wife of the petitioner's grantee, together with the right to any award that might be made pursuant to the condemnation. She had joined in a previous conveyance, however, of all of Lot G69 in which it was specifically set forth that Mazzone had the right to any such award. She is now, of course,

chargeable with notice of any rights which Mazzone may have to the award by virtue of the various conveyances.

The Appellate Division agreed with the contention of respondents that the clause above quoted and contained in the conveyance from Mazzone to Hjorth and in the subsequent conveyances was void under the provisions of article I, section 14, of the State Constitution in effect at the time the conveyance was made that "all fines, quarter-sales, or other like restraints upon alienation, reserved in any grant of land hereafter to be made shall be void" and that, in any event, the provision constituted a restraint on alienation which was void on the ground that it was repugnant to the estate granted (*De Peyster* v. *Michael*, 6 N. Y. 467).

The constitutional provision referred to first appeared in the State Constitution of 1846 and embodied the rule of the common law previously existing. There can be no doubt that the rule of the common law as well as the constitutional provision was intended to and did void covenants in voluntary conveyances of a fee which had the effect of restraining subsequent alienation of the property except where the covenantee had a reversion in the property (*Continental Ins. Co.* v. *N. Y. & H. R.R. Co.*, 187 N. Y. 225, 237). The restraints indicated apply to voluntary sales only by the act of the owner or the lessee (4 Kent's Commentaries, p. 124). The reservation in the deed from Mazzone to Hjorth did not have the effect and was not intended to have the effect of restraining alienation of the property, and this is sufficiently evidenced by the fact that it did not restrain or interfere with various subsequent conveyances. The taking of the land by the city in the condemnation proceeding, even though it can be termed a sale (*Tiffany Studios* v. *Seibert*, 223 N. Y. 712; *Matter of City of New York* [*Elm Street*], 239 N. Y. 220), was not a voluntary sale or conveyance. The right to take private property for public use without the consent of the owner is an inherent and unlimited attribute of sovereignty whose exercise may be governed by the Legislature within constitutional limita-

tions and by the Legislature within its power delegated to municipalities (*People* v. *Adirondack Ry. Co.*, 160 N. Y. 225, 237, 238; *People ex rel. Burhans* v. *City of New York*, 198 N. Y. 439; *Matter of Board of Water Supply of City of New York*, 277 N. Y. 452, 455). It is a *compulsory* taking of an estate in fee absolute upon payment of just compensation to the owner (*Kahlen* v. *State of New York*, 223 N. Y. 383, 388). The transfer to the city was a sale *in invitum* to which neither the constitutional provision nor the rule of the common law voiding covenants restricting alienation applies (4 Kent's Commentaries, p. 124; *Jackson* v. *Corliss*, 7 Johns. 531, 534; *Riggs* v. *Pursell*, 66 N. Y. 193, 196; *Higgins* v. *McConnell*, 130 N. Y. 482, 487, 488). There can be no escape from the proposition that the principle laid down in those cases, although they involved different facts, applies to the case of the taking by the city in condemnation proceedings for public use.

Attention has been called to the fact that the final map adopted in 1901 set out the specific strip finally taken in the condemnation proceedings. The city proceeded on the basis of that map. The subsequent maps that were filed constituted amendments not affecting the property in question. While the filing of the map did not interfere with the free use or disposition of the property by its owners up to the time that the condemnation proceeding was actually commenced (cf. *Headley* v. *City of Rochester*, 272 N. Y. 197), nevertheless, the map was notice to all who might be interested in or deal in the property of the probability of future condemnation. That the possibility thereof was taken into consideration by all parties to all conveyances must have made a material difference in the computation of the purchase price. The bargain and sale transaction between Mazzone and Hjorth reserved to the former substantial rights. Still the reservation did not restrict the full and free conveyance of the property nor did the conveyance or reservation deprive Hjorth or his successors in interest who might at the moment have title of any right to the complete and exclusive possession of

the property. Mazzone neither had nor attempted to exercise any control over the disposition of the property by subsequent owners. There was no reservation of any right in the property itself, but the reservation went only to the proceeds of a forced sale if and when that might occur. No authority has been called to my attention by which Mazzone can be deprived of the rights which he reserved to the award, all of which rights were subsequently consistently reserved by subsequent owners for his benefit.

Whatever effect the provisions of section 976 of the Greater New York Charter (Laws 1901, ch. 466, as amd.) might otherwise have had upon the question of the time of the vesting of title in the city, it is conceded here that title to the land condemned vested in the city of New York on March 2, 1931, during the pendency of the proceeding for condemnation and at a time when the Vitabel Realty Corporation was the owner of the property by deed in which it accepted title containing the provision that the amount of the award should belong to Mazzone. Amanda Hjorth did not acquire title to the premises remaining after the twenty-five-foot strip was taken by the city until May 28, 1935. Although the deed to her from the Vitabel Realty Corporation omitted the reservation of the award to Mazzone and purported to transfer the right to the award to her, the grantor had no interest in the award at that time to transfer. That it had no such interest was clearly understood by Amanda Hjorth at the time that she took the conveyance, for she had executed a previous conveyance of the same property to another purchaser with clause included expressly reserving to Mazzone the amount of any future award. Based upon the clear intent of the parties, the deed which she executed and in which she made the reservation, although giving no title in and by itself to Mazzone, served as an exception from the thing granted and as definite indication of her knowledge of an adverse claim to the thing excepted (*West Point Iron Co.* v. *Reymert*, 45 N. Y. 703). That it was her

intent that any future award should not be included in the conveyance has met with no contradiction by her. She stands solely upon the proposition that, regardless of intent, such a reservation was void. She knew, therefore, that at the time the Vitabel Realty Corporation transfer to her took place the award was reserved by and belonged to Mazzone. She cannot now be heard to assert the contrary.

David Hjorth made a claim here to the award on the ground that he was an owner of a mortgage on the premises at the time the title vested in the city and at the time the award was made. He was the grantee in the deed from Mazzone in which the reservation of the award in the latter first appeared. The mortgage on which he based his claim was not executed until subsequent to that time. He presented no proofs before the official referee to sustain his claim. As matter of law the mortgage must be deemed to have been subject to any rights in Mazzone existing at the time of its execution and delivery.

The city of New York asserts that it is entitled to offset the assessment for benefit on the remaining property against the award under the provisions of section 988 of the Greater New York Charter (amd. L. 1915, ch. 606), which provides that " if it shall appear by the final decree of the court as to awards or by the report of the commissioners of estimate, as the case may be, or otherwise, that a person entitled to an award also owns property against which an assessment in the same proceeding shall have been entered for collection, the city may, without the assent of the person entitled to the award, set off the assessment against the award." Attention is called to the fact that the final decree provided that the award should go to unknown owners. We have already shown that Amanda Hjorth had no interest in the award either at the time title vested in the property or at the time of the final decree. The part remaining after the taking was vested in the Vitabel Realty Corporation, a party to this proceeding, at the time title vested in the city of New York. There was no common ownership in

Amanda Hjorth or in the Vitabel Realty Corporation of the award and of the property not taken during any of the period subsequent to the making of the order to condemn the property (Cf. *Matter of Nunez*, 226 N. Y. 246, 251). Mazzone owned the award and did not own the property against which the assessment had been entered.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division. (See 281 N. Y. 671.)

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.