Dye, J.
The Appellate Division, First Department, has reversed an order of the Special Term, Supreme Court, New York County, which denied plaintiffs’ motion for a temporary injunction, and granted the motion, restraining the city, ‘1 pending determination of this action, from: (1) taking title without plaintiffs’ consent to any of the plaintiffs’ land, buildings, buses, franchises or other property; (2) taking possession without plaintiffs’ consent of any of the plaintiffs’ lands, buildings, buses, franchises, or other property and (3) proceeding to carry out any plan of condemnation to acquire any of the land, build *346 ings, buses, franchises or other property of the plaintiffs ”, at the same time staying its enforcement and granting leave to appeal to this court, certifying as a question of law: “ Was the order of the Appellate Division entered April 2,1962 granting a temporary injunction herein properly made? ”
The action is to permanently restrain the City of New York from acquiring plaintiffs’ omnibus properties and franchises and for a judgment declaring the statute under which the city purports to act invalid and void on constitutional grounds. A temporary injunction was sought on the general ground that the proposed acquisitions would work irreparable harm and damage, the gravamen being the constitutional invalidity of the statute. The Attorney-General of the State of New York has been made a party and has appeared and filed a brief in this court, solely to defend the constitutionality of the statute so stricken (Executive Law, § 71).
The Special Term denied the motion. The Appellate Division, on the other hand, granted the motion for the reason that ‘ ‘ plaintiffs have established, prima facie, that the statute under which the city has acted is unconstitutional for failure to provide the giving of any notice to the owners of property condemned prior to the actual taking of possession ”.
We hold to the contrary.
Section 20 of the General City Law (as amd. by L. 1962, ch. 161, eff. March 19, 1962) authorizes a city with a population of one million or more inhabitants to acquire by condemnation any property and the franchises of any person, firm or corporation situated within such city used and usable in the operation of omnibus lines which are entirely within and do not extend beyond the boundaries of such cities, the immediate acquisition of which property and franchises is determined by the Board of Estimate or other appropriate governing body of such city to be necessary to serve the public convenience through the provision of adequate omnibus transportation, notwithstanding the fact that such property and franchises were or are devoted to a public use. In so doing, the Legislature declared that “ the continued uninterrupted adequate, efficient and safe operation of omnibus lines [in such cities] is essential to the health, welfare and safety of the inhabitants of such cities [and that the provisions of the statute as enacted] relate to the protection of *347 the public health, welfare and safety and are for a public purpose ” (§1).
Forthwith upon the enactment of such amendment, the city proceeded to the adoption of appropriate enabling resolutions including authorization for the payment of properties to be acquired (Cal. No. 1, 2, March 21, 1962). The statute also provides that “ upon due proof to the satisfaction of the court of the filing of the resolution as hereinabove described, such court * * * shall thereupon enter an order vesting title to such property and franchises, if any, in such city ’ ’. This provision, contrary to plaintiffs’ contention, does not call for the doing of a mere ministerial act but calls for the exercise of judicial power (Matter of Davies, 168 N. Y. 89; People ex rel. Welch v. Bard, 209 N. Y. 304).
Notwithstanding the sweeping allegations in the complaint of bad motive and wrongful intention underlying the taking, the basic question is a narrow one, confined as it is to the power of the Legislature to enact a law authorizing a municipality to condemn private property for a public use without providing for personal notice to the owner or owners in advance of the condemnation.
It is, of course, axiomatic that every presumption favors the constitutional validity of a legislative enactment (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150). This principle is especially pertinent here, as we are dealing with the most ancient of sovereign prerogatives, the exercise of the power of eminent domain, a power which antedates our State and Federal Constitutions, and which is recognized to have survived the adoption of those Constitutions, subject only to the restrictions that the taking shall be for an authorized public use and that just compensation be paid to the owner (N. Y. Const., art. I, § 7; Walker v. Hutchinson City, 352 U. S. 112).
In the exercise of the power of eminent domain, the authorities all agree, neither the Constitution nor judicial decisions require the sovereign to give advance notice to the condemnees of its intention to take their property. In the long history of the State, the Legislature has, from time to time, authorized many great public works requiring the appropriation of vast amounts of private property, some of which were challenged on the very grounds now urged and Avere sustained (People v. Smith, 21 N. Y. 595; Matter of Village of Middletown, 82 N. Y. 196).
*348 The exercise of the power of eminent domain in a summary fashion has long been sustained as not violative of constitutional due process.
The United States Supreme Court has recognized the long reach of the sovereign’s arm by ruling that the power of eminent domain may be exercised by simply entering into possession without either prior notice or a court order (United States v. Dow, 357 U. S. 17, 21); the decisions in this State are in accord (Waterloo Woolen Mfg. Co. v. Shanahan, 128 N. Y. 345, 363). In People v. Adirondack Ry. Co. (160 N. Y. 225, affd. 176 U. S. 335), this court, by way of dictum, but nonetheless meaningfully, likewise made it clear that, as long as a condemnee is given an adequate opportunity to be heard on the subject of compensation, there need not be any other notice of an intended appropriation unless some statute requires a hearing (citing Cooley’s Constitutional Limitations, 356).
The validity of statutes under which action has been taken without prior notice, because none was required, has been upheld in a number of areas of sovereign concern, such as the commitment of an allegedly insane person (Mental Hygiene Law, § 74; Matter of Coates, 9 N Y 2d 242, app. dsmd. 368 U. S. 34), seizures under the Trading with the Enemy Act (Societe Internationale v. Rogers, 357 U. S. 197), and other State condemnation acts (Bragg v. Weaver, 251 U. S. 57). The constitutional requirement with respect to notice in eminent domain proceedings concerns the opportunity to be heard on the issues of compensation and public use; due process requires adequate notice so that the right to be heard may be availed of (cf. Schroeder v. City of New York, 10 N Y 2d 522, probable jurisdiction noted 369 U. S. 863).
The statute contains provisions completely adequate in this respect; it provides that a notice of acquisition shall be directed to the owners of the property by serving such owners “ personally or by registered mail * * * within fifteen days after such vesting of title ’ ’ and that, except as otherwise provided, “the procedure for ascertainment of the compensation to be paid to the owners * * * shall be, so far as practicable, the procedure governing the acquisition by such city of real property located in such city ”. Such notice is also sufficient to permit the condemnees to institute an action, such as this one, for the purpose of objecting to the condemnation.
*349 Although the statute does not require prior notice to the condemnee, and none was given, these plaintiffs nonetheless knew of the city’s intention to take their omnibus lines. Their representatives attended the meetings of the various city legislative bodies and interposed objections to the adoption of the enabling resolution. Their counsel appeared at Special Term for the purpose of procuring an order to show cause why the city should not be temporarily restrained from procuring the condemnation order and, upon the ex parte application by the city, for a condemnation order, at their own request, were heard on the merits and interposed objections to its grant, as well as stipulating that the title vested at 7:18 p.m., March 21, 1962. For purposes of this appeal we do not hold that such participation amounted to a waiver of the notice requirement they now say is essential to constitutional validity of the statute. However, it cannot be said that they did not have knowledge in advance of the city’s application to condemn.
Although it is clear that the question of whether a taking is for a public use is a judicial one (see, e.g., Denihan Enterprises v. O’Dwyer, 302 N. Y. 451; Matter of Townsend, 39 N. Y. 171; Rindge Co. v. Los Angeles County, 262 U. S. 700), it is equally clear that the taking over by government of the property of a public service corporation for the purpose of providing the same service under governmental, as opposed to private, auspices is a public use (Long Is. Water Supply Co. v. Brooklyn, 166 U. S. 685, affg. 143 N. Y. 596; West Riv. Bridge Co. v. Dix, 6 How. [47 U. S.] 507).
Plaintiffs contend, however, that the true purpose of the condemnation is to reconvey their property to another corporation to perform the very services which they have heretofore been providing, and, as such, is not for a public use. However, that argument is not available to plaintiffs at this stage of the proceedings. There is no proof in the record concerning this allegation and, in the absence of proof, the court must assume that the municipal authorities are not about to defy a constitutional mandate (see Salmian v. Impellitteri, 305 N. Y. 414). However, since the complaint is not being dismissed, the plaintiffs are not being deprived of any opportunity to prove their allegations in this action, if they so choose. The same applies to plaintiffs’ allegations that the condemnation was the result of conspiracy and bad faith on the part of the Board of Estimate *350 (cf. Kaskel v. Impellitteri, 306 N. Y. 73, 79; People v. Fisher, 190 N. Y. 468, 477).
The order appealed from should be reversed and that of Special Term reinstated, with costs in this court and in the Appellate Division, and the question certified answered in the negative.
Fuld, J. (concurring). I, too, am for reversal, but I would pinpoint and limit the ground on which I place my vote. Constitutional requirements are satisfied as long as the property owner is assured of a judicial forum in which to (1) demonstrate, if he can, that the taking is not for a legitimate public purpose and (2) establish the value of his property and the damages to which he is entitled. By the court’s present decision, the plaintiffs are assured of an opportunity to be heard on both of these issues.
Chief Judge Desmond and Judges Froessel, Burke and Foster concur with Judge Dye ; Judge Fuld concurs in a separate opinion in which Judge Van Voorhis concurs.
Order reversed, etc.