Frank W. KOHLASCH, as Executor of the Last Will and Testament of Frank W. Kohlasch, Deceased and Echo Bay Boat Yard, Inc., Plaintiffs,

v.

NEW YORK STATE THRUWAY AUTHORITY, Defendant.

NEW YORK STATE THRUWAY AUTHORITY, Third-Party Plaintiff,

v.

CITY OF NEW ROCHELLE, Third-Party Defendant.

No. 76 Civ. 4395.

United States District Court, S. D. New York.

Jan. 7, 1980.

August C. Nimphius, Jr., White Plains, N. Y., for plaintiffs.

McGovern, Connelly & Davidson, New Rochelle, N. Y., for defendant and third party defendant City of New Rochelle; Frank H. Connelly, New Rochelle, N. Y., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs, owner and lessee respectively of real property in the City of New Rochelle (the "City") seek damages from the City for injuries resulting from the discharge onto their property of drainage carried from City streets through a drain constructed by the defendant on land adjacent to plaintiffs' property. In addition, plaintiffs seek permanent injunctive relief against a continuation of such conduct.

This action is the latest in a series of efforts by the plaintiffs to secure the requested relief. Initially, they filed a complaint in this Court naming only the New York State Thruway Authority as defendant. In that complaint they alleged various causes of action and theories of jurisdiction, including: injury to a navigable channel of water crossing plaintiffs' property, for which the Court's admiralty jurisdiction was invoked; the taking of property without due process of law or just compensation, a cause of action alleged under the federal question and civil rights statutes; and common law torts, for which the plaintiffs sought to invoke the Court's pendent jurisdiction. After filing a third-party complaint against the City, the Thruway Authority moved to dismiss the complaint against it. In an opinion dated October 17, 1978, this Court dismissed all causes of action against the Thruway Authority except those alleging obstruction of plaintiffs' navigable waters; the latter were cognizable within the Court's admiralty jurisdiction.[1]

While their action against the Thruway Authority was pending, plaintiffs filed a complaint in the New York State Supreme Court alleging causes of action against the City arising out of the same circumstances. Shortly thereafter, on June 2, 1978, the plaintiffs filed the present complaint in this Court against the City. Like its predecessor complaint against the Authority, this complaint alleges damages to maritime interests; due process claims grounded on an alleged unconstitutional taking of property; and a variety of state law torts, principally sounding in trespass. The basic injury alleged by the plaintiffs remains the same, although here the injurious acts are attributed to the City, acting either alone or in concert with the Thruway Authority.

The City does not dispute plaintiffs' assertion of admiralty jurisdiction over the fourth, fifth, ninth, and tenth causes of action to the extent that they allege maritime injury. However, it has moved to dismiss the remaining six causes of action for failure to state claims upon which relief may be granted. In doing so, it urges the Court to apply the rationale of its previous opinion to the present situation. This sug-

---

1. *Kohlasch v. New York State Thruway Auth.*, 460 F.Supp. 956 (S.D.N.Y.1978).

gestion disregards the unique features of the Thruway Authority, and the obvious differences between it and the City.[2] The Court reaches the same result it did in its earlier opinion, albeit for somewhat different reasons.

### A. Unconstitutional Taking

In order to state a cause of action for unconstitutional taking, plaintiffs must show that their property was taken under color of state law, without due process or just compensation, and that no "adequate provision" to compensate for the taking exists under state law.[3] Here they have failed to do so.

The power to condemn is a sovereign, not municipal function.[4] However, in New York that power has long been delegated to cities and to municipalities.[5] The City of New Rochelle is both. Specifically, the City is empowered under New York law "to acquire by purchase, if [it] is able to agree with the owners on the terms thereof, and otherwise in the manner provided by the eminent domain procedure law, real property within or without [its] limits for the construction, maintenance and operation of drainage channels and structures for the purpose of flood control . . . ."[6] In short, it has the power to condemn; and when it exercises that power, it acts under color of state law.[7]

From its very inception New York law has provided an appropriate method for the enforcement of just compensation in condemnation cases. The New York State Constitution, paralleling the Federal Constitution, requires such compensation,[8] and the New York statute under which municipalities must act when they condemn land creates the appropriate judicial mechanism.[9] Moreover, New York state courts have long been available to provide full relief to those damaged by such takings.[10] This is true even in cases of a de facto taking, as long as the plaintiffs can show a "physical entry

---

2. Much of the Court's earlier opinion turned on the fact that exclusive jurisdiction of claims against the Thruway Authority lies in the New York Court of Claims. Because the Thruway Authority was entitled to the limited immunity that would have been available to it had it been sued in a state court, state law claims against it could not be heard in federal court. *See id.* at 959, 962 & n. 26.

3. *Id.* at 960–61 & n. 13 (citing cases).

4. *Fifth Ave. Coach Lines, Inc. v. City of New York,* 11 N.Y.2d 342, 229 N.Y.S.2d 400, 183 N.E.2d 684 (1962); *Application of Mazzone,* 281 N.Y. 139, 146, 22 N.E.2d 315 (1939). *Cf. Secombe v. Railroad Co.,* 90 U.S. (23 Wall.) 108, 117–18, 23 L.Ed. 67 (1874).

5. N.Y. General City Law § 20(2) (McKinney's 1968); N.Y. General Municipal Law § 74 (McKinney's 1977). *See In re Board of Water Supply of City of New York,* 277 N.Y. 452, 455, 14 N.E.2d 789 (1938); *People ex rel. Horton v. Prendergast,* 220 App.Div. 351, 222 N.Y.S. 29, 36 (3d Dep't 1927), *aff'd,* 248 N.Y. 215, 162 N.E. 10 (1928), *appeal dismissed,* 278 U.S. 579, 49 S.Ct. 177, 73 L.Ed.2d 517 (1929); *In re Brooklyn,* 143 N.Y. 596, 38 N.E. 983 (1894), *aff'd sub nom., Long Island Water Supply Co. v. Brooklyn,* 166 U.S. 685, 17 S.Ct. 718, 41 L.Ed. 1165 (1897).

6. N.Y. General City Law § 20(2) (McKinney's 1968).

7. *See O'Grady v. City of Montpelier,* 573 F.2d 747, 749 & n. 5 (2d Cir. 1978).

8. N.Y.Const., art. I § 7 (McKinney's 1969).

9. *See* N.Y. Eminent Domain Law § 101 (purpose); § 201 (requirement of hearing); § 202 (requirement of notice); § 207 (judicial review); § 301 (requirement of just compensation); § 502(B) (exclusive jurisdiction in the state Supreme Court of claims against condemnors other than the state).

10. At least one court has traced the origin of the right in New York to just compensation to a time antecedent to the American Revolution. *See People v. Priest,* 206 N.Y. 274, 289, 99 N.E. 547 (1912).

The available state procedure contemplates complete relief. An award must include not only direct damage to the condemnee, but consequential damages, *see Priestly v. State,* 23 N.Y.2d 152, 295 N.Y.S.2d 659, 242 N.E.2d 827 (1968); including damages to the residue of the property, *see In re Board of Water Supply of City of New York,* 277 N.Y. 452, 14 N.E.2d 789 (1938); as well as interest on the property's value calculated from the time of the taking, *see Leeds v. State,* 20 N.Y.2d 701, 282 N.Y.S.2d 767, 229 N.E.2d 446 (1967); *LaPorte v. State,* 6 N.Y.2d 1, 187 N.Y.S.2d 737, 159 N.E.2d 540 (1959).

by the condemnor, a physical ouster of the owner, a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property."[11] The physical entry alleged here is precisely the kind of intrusion for which the New York state courts already offer a remedy. Indeed, for more than one hundred years those courts have explicitly recognized that the occupancy of land for the purposes of maintaining drainage ditches, and the consequent injury, are "interference[s] with the proprietary interests of the owner as entitle[] him to the just compensation made necessary by the [New York] Constitution as a condition precedent to the taking of private property for public use."[12]

■ Plaintiffs are in a position to obtain complete relief, including both compensation and injunctive relief, in their pending action in the state court. Here they seek, not to bypass the state courts as they did once before,[13] but instead to proceed against the City on the same causes of action in both forums. New York law contains "adequate provision" for these plaintiffs to obtain just compensation in the state courts. Thus, plaintiffs' claims of unconstitutional taking fail to state a federal cause of action. Accordingly, the second and seventh claims are dismissed.

### B. *Pendent Jurisdiction over State Law Claims*

Plaintiffs urge the Court to exercise its pendent jurisdiction over the four remaining state law claims, on the theory that both these and the admiralty claims "derive from a common nucleus of operative fact."[14] Assuming that this assertion is true, and that the admiralty claims in fact are substantial, the Court has power to hear the state law claims. However, that power need not always be exercised: "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims . . . . ."[15]

■ In the instant case several factors suggest that these goals will not be advanced through the exercise of pendent jurisdiction. Nor will the dangers of piecemeal litigation be exacerbated any further by a decision to decline pendent jurisdiction. Regardless of how the Court decides the instant motion, the plaintiffs' inartful pleading has already produced trifurcated actions in three forums. To the extent that they wish to pursue their claims against the Thruway Authority, the plaintiffs are required to proceed in the New York Court of Claims. If they press their due process claims (which were rejected here) against the City, they must do so in the State Supreme Court, where they have already commenced an action against the City. The admiralty claims will remain in this Court.

Other considerations counsel against the exercise of pendent jurisdiction. Plaintiffs' initial decision to proceed against the City in the state courts may be regarded as tacit recognition of the fact that the bulk of

---

11. *City of Buffalo v. J. W. Clement Co.*, 28 N.Y.2d 241, 255, 321 N.Y.S.2d 345, 357, 269 N.E.2d 895, 903 (1971). *See also Keystone Associates v. State*, 39 A.D.2d 176, 333 N.Y. S.2d 27 (3d Dep't 1972), *aff'd*, 33 N.Y.2d 848, 352 N.Y.S.2d 194, 307 N.E.2d 254 (1973); *Beaux Arts Properties, Inc. v. United Nations Development Corp.*, 68 Misc.2d 785, 328 N.Y. S.2d 16, *aff'd*, 39 A.D.2d 844, 332 N.Y.S.2d 1008 (2d Dep't 1972).

12. *People ex rel. William v. Haines*, 49 N.Y. 587, 590 (1872). *See also People v. Nearing*, 27 N.Y. 306 (1863). *Cf. In re Cheesebrough*, 78 N.Y. 232 (1897).

13. When plaintiffs filed their original complaint in this Court against the Thruway Authority, they did so before attempting to pursue their state remedies. We held that their deliberate bypassing of an adequate state remedy eviscerated their federal constitutional claim. *Kohlasch v. New York State Authority*, 460 F.Supp. 956, 960 & n. 12 (S.D.N.Y.1978) (citing cases).

14. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

15. *Id.* at 726, 86 S.Ct. at 1139 (footnote omitted).

their claims involve local issues to be resolved under well-established principles of state common law. Without at this time considering the merits of their admiralty claims, this Court is mindful of the Supreme Court's admonition: "[R]ecognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." [16]

Even if plaintiffs' federal claims are not mere "appendages," the bulk of their complaint is clearly comprised of state issues. Where the issues raised are peculiarly matters of state law and of state policy, it is appropriate to leave their resolution to state tribunals.[17] Finally, even if this Court were to exercise its pendent jurisdiction, it would be required by considerations of comity and efficiency to stay its decision until the resolution of the prior state court action.[18] Under all of these circumstances, the Court declines to exercise its pendent jurisdiction over the state law claims.

Accordingly, the first, third, sixth, and eighth causes of action are also dismissed.

So ordered.

---

16. *Id.* at 727, 86 S.Ct. at 1140.

17. *Id.* at 726–27, 86 S.Ct. 1130. *Cole v. Schenley Industries, Inc.,* 563 F.2d 35, 44 (2d Cir. 1977); *Pride v. Community School Bd. of Brooklyn,* 482 F.2d 257, 272 (2d Cir. 1973).

18. *Simmons v. Wetherell,* 472 F.2d 509, 512 (2d Cir. 1973) (citing cases), *cert. denied,* 412 U.S. 940, 93 S.Ct. 2777, 37 L.Ed.2d 399 (1973).