In the Matter of the Application of GEORGE J. GILLESPIE et al., Constituting the Board of Water Supply of the City of New York, Appellants, to Acquire Real Property in the Towns of Shandaken, Woodstock and Olive.

THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

(Argued May 28, 1936; decided July 8, 1936.)

*Paul Windels, Corporation Counsel* (*George S. Parsons, Paxton Blair* and *John D. Van Wagoner* of counsel), for appellants.

*Harry H. Flemming* for respondent.

CRANE, Ch. J.  The Board of Water Supply of the City of New York on the 8th day of October, 1935, petitioned the Supreme Court for the appointment of commissioners to condemn certain rights in lands and the

Esopus creek for use by the city for its water supply. All power for these proceedings is given by chapters 723 and 724 of the Laws of 1905, as amended. The Corporation Counsel prepared and presented this petition at the command of the court. On September 21, 1934, a peremptory order of mandamus was made at Special Term directing him to file maps and apply for the appointment of commissioners " to hear and determine claims for any and all legal damages to person or property, whether direct or indirect, caused by the increased flow in the Esopus Creek, resulting from the additional quantities of water therein, caused by the water from the tunnel, and the approval and execution of the plans of the said City of New York, as provided for by Chapters 723 and 724 of the Laws of 1905 as amended."

The petition stated the rights in and to Esopus creek and the adjoining property sought to be taken and to be valued as follows: " The right in perpetuity to interfere with or otherwise affect the natural and usual flow of the waters of the Esopus Creek in that portion of said Creek lying between the point in the Town of Shandaken, Ulster County, New York, where the outlet of the Schoharie Water Tunnel, maintained by the Department of Water Supply, Gas and Electricity of the City of New York, joins said Esopus Creek and the point southerly therefrom, where said Esopus Creek flows into the Ashokan Reservoir in the Town of Olive, Ulster County, New York, to the extent that such natural and usual flow of the waters of said Creek is, or may hereafter be, interfered with or otherwise affected by the induction into said Creek, in the portion thereof above described, either continuously or from time to time, and in such quantities as the operating needs of such Department may require, of the water of said Schoharie Water Tunnel, not exceeding the maximum flow of water which may be carried or conducted through the said tunnel; such tunnel having a height of 11-1/2 feet and a width of 10 feet,

three inches, an elevation at its northerly end of 1050 feet and at its southerly end of 970 feet, both above mean sea level of the Atlantic Ocean; a slope southerly of 4.4 feet per mile, and a maximum capacity of about 687,000,000 gallons daily, flowing at a maximum rate of about 1063 cubic feet per second."

This description was well understood as the user sought to be legalized had in fact existed and continued since February of 1924, which was the reason why the property owners adjoining Esopus creek applied for and obtained a mandamus compelling the city to initiate proceedings to pay them for the rights taken.

The New York Central Railroad Company, the present owner of the railroad properties formerly belonging to the Ulster and Delaware Railroad Company, has a railroad line along the banks of Esopus creek at certain points and is the owner of fourteen damage parcels designated on the condemnation map accompanying these proceedings. It filed an answer asking for a dismissal of the petition because no effort had been made to agree upon compensation: and because the use of the water as proposed " would in times of high or flood waters so add to the volume of water in the Esopus Creek * * * to cause irreparable and continuous injury to the property of this respondent."

The Special Term struck out the answer; the Appellate Division reversed and dismissed the petition.

Chapter 314 of the Laws of 1906 provides: " Where loss, damage or expense, direct or consequential, has resulted to any duly incorporated railroad corporation, operating a steam railroad in any county in which land shall be acquired in pursuance of the provisions of this act * * * the board of estimate and apportionment of the city of New York, is hereby authorized and empowered to agree with such railroad corporation upon the compensation which shall be made to it for such loss * * *. In the event of no agreement being reached between said

board and such railroad corporation, the commissioners of appraisal * * * [are] authorized and directed to pass upon such claim and to make awards therefor as provided in this act." (§ 3.)

This law does not require the city to make an effort to agree upon compensation before resorting to the courts; it may do so but is under no compulsion. In this respect this case differs from *Matter of Lockport & Buffalo R. R. Co.* (77 N. Y. 557), upon which the Appellate Division relied. The Laws of 1850, chapter 140, governing that case, read: " * * * if the two corporations cannot agree upon the amount of compensation to be made therefor * * * the same shall be ascertained and determined by commissioners, to be appointed by the court." (§ 28, subd. 6.) The petition must state the inability to agree " and the reason of such inability." (§ 14.)

The petition in this case was sufficient, and not defective for failing to allege an effort to agree.

We are also of the opinion that the rights or property sought to be acquired were stated with sufficient precision and clarity. We have quoted this part of the petition above and note that no portion of the railroad itself is taken. The user of the creek for additional water had existed for twelve years; the city desires to legalize this use and pay the damage as found by the Commissioners.

We are agreed that the city of New York may not hereafter be held to answer in damages for the exercise of whatever right it shall acquire in this proceeding. The respondent railroad alleges in its answer: " That the rights sought to be acquired by the petitioner herein would *in times of high or flood waters* so add to the volume of water in the Esopus Creek * * * a sufficient quantity to cause irreparable and continuous injury to the property of this respondent. * * * "

But the city does not here petition for the right thus to injure the property of the respondent railroad. As its petition recites, the city is seeking " The right in per-

petuity to interfere with or otherwise affect *the natural and usual flow* of the waters of the Esopus Creek   *   *   * either continuously or *from time to time,* and in such quantities as the operating needs of such Department [of Water Supply of the city] may require, of the water of said Schoharie Water Tunnel, *not exceeding* the maximum flow of water which may be carried or conducted through the said tunnel.   *   *   * "

We suppose that " the natural and usual flow of the waters of the Esopus Creek " is a fact capable of establishment by trustworthy engineering data that is doubtless already in the possession of the city. Certainly the volume of the stream " in times of high or flood waters " cannot be said to be its " natural and usual flow." Nothing in this petition, then, will justify the city in so increasing the volume of the Esopus creek in unusual or abnormal conditions of flood or high water as to injure the property of the respondent railroad. Such an interference with the stream will not be sanctioned by any right that the city can acquire under this petition.

The order of the Appellate Division should be reversed, and that of the Special Term affirmed, with costs in this court and in the Appellate Division. (See 272 N. Y. 502.)

LEHMAN, O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.