David L. Glickmau, J.
This is an action for a declaratory judgment coupled with a request for injunctive relief. The case was tried at Special Term before the court without a jury. At the conclusion of the trial, the parties stipulated to waive submission of proposed findings.
From the preponderant evidence presented at the trial, I find the facts substantially as follows:
The defendants, J. Burch McMorran and Austin Sarr are, respectively, the Superintendent of Public Works of the State of New York and the Metropolitan District Engineer of the State Department of Public Works, in charge of Long Island and the greater metropolitan area. On file in the district office at Babylon are plans pertaining to a proposed project to improve *929 and widen Sunrise Highway, one of Long Island’s main traffic arteries, from a point just west of Route 109 in the Town of Babylon to a road known as Phyllis Drive in the Town of Brook-haven, all in Suffolk County, New York. The proposed widening will increase the traffic facilities of Sunrise Highway from a four-lane highway, as at present, with two lanes for easterly bound traffic and two lanes for westerly bound traffic, to a 10-lane highway having three so-called express lanes in each direction and bounded on each side by two so-called local or service lanes in each direction.
The fact that the Department of Public Works, in the persons of the two defendants, proposes to proceed with such project is undisputed. It appears clearly and affirmatively from the unrefuted testimony of the defendant, Sarr, that the plans provide for the three easterly and westerly bound express lanes to be separated from the two outer or slow lanes on each side thereof by a chain-link fence four feet in height, thereby effectively preventing traffic from moving from the express lanes to the slow lanes, or conversely, from the slow lanes to the express lanes, except at designated places some 1,600 feet apart by means of so-called “ slip-offs ” and “ slip-ons,” highly descriptive words that are practically self-explanatory. In addition, cross traffic will be enabled to travel north to south, or south to north across this 10-lane highway only by means of overpasses or underpasses constructed at certain designated (but not all) cross streets intersecting the thoroughfare. Where no such passes exist, the present crossroads will permit traffic to proceed only into the nearest slow lanes of the highway, direct travel across the highway being barred by the fences.
Such, in essence, is the plan of construction which the defendants claim to be necessary and requisite for the efficient movement of traffic, and more important, for the safety of the traveling public, due to the tremendous increase in traffic and the concurrent increase in traffic hazards experienced on this highway in recent years. Traffic counts and surveys made of conditions appertaining to Sunrise Highway have established, according to the District Engineer’s testimony, the pressing need for the improvement at the present time, let alone the increasingly heavier requirements of the future, for the existing traffic now far exceeds what the department’s engineers consider to be the acceptable capacity of the highway.
Of deep concern to the plaintiffs in this action is that feature of the foregoing plan dealing with the construction of the fences on both sides of the express lanes, thus drastically limiting their unrestricted and free access to all portions and lanes of the *930 highway as proposed to he widened, a freedom of access and lack of restriction presently enjoyed under the existing conditions. The plaintiffs are owners or occupants of various parcels of property fronting and abutting on Sunrise Highway in the Towns of Babylon and Islip, used or usable for commercial purposes. It is their contention that the construction proposed will result in the creation of a controlled access highway within the purview of section 30 (subd. 1, par. [a]) of the Highway Law of the State of New York, and that, in accordance with that section, a resolution by a majority vote of the members of the Board of Supervisors of Suffolk County approving the project is required as a condition precedent to undertaking the improvement. The afore-mentioned section reads as follows: “Upon the construction, reconstruction or improvement, pursuant to this chapter of a state highway the property required therefor may be acquired by the state by appropriation as hereinafter provided. A state highway indicated under this chapter for construction or improvement, or any portion of such highway, may be constructed, reconstructed or improved, as a controlled access highway, upon the adoption of a resolution by a majority vote of the members of the board of supervisors of the county in which the highway is to be constructed. The resolution of the board of supervisors herein referred to shall not be required in relation to highways to be projected as through trunk routes and principally on new location. ’ ’
In support of their contention, plaintiffs have introduced evidence indicating the adverse effect that the limitation of ingress upon and egress from the express lanes will have on business enterprises operating along the route of Sunrise Highway in the area in question, including the businesses conducted by the plaintiffs. They have stressed the possibility of loss in realty values, the inability to sell or lease property on Sunrise Highway since news of the project became public, the fact that the Suffolk County Board of Supervisors has not adopted the resolution referred to in section 30 of the Highway Law although a form of such resolution was sent to the board by the District Engineer with a request for its adoption, the further fact that at a public hearing initiated by the State Public Works Department and held on August 9, 1961, employees of the department termed the proposed improvement “ a controlled access highway ”, and finally, the definition of a “ controlled access facility ” as issued by the Public Roads Administration of the Federal Works agency, to the effect that such facility is a highway or street, a parkway or freeway, “ especially designed for *931 through traffic to which owners or occupants of abutting land or other persons have only a restricted right or easement of access.” Plaintiffs also presented the evidence of a professional planning consultant, testifying as an expert, that the design or plan proposed by the Public Works Department calls for the construction of a controlled access highway, in the opinion of the witness, based upon articles, books and treatises read by him, including a Government publication entitled 1 ‘ Legal Aspect of Controlling Highway Access ” authored by one whom the witness regarded as a qualified expert.
I have carefully considered the evidence in this case. I am in complete sympathy with the predicament of the plaintiffs, created not through their acts, but because of the planned reconstruction of the highway on which their properties abut. However, I cannot disregard the applicable law. Any right which the plaintiffs may have to obtain the relief sought in this action is predicated solely on the provisions of section 30 (subd. 1, par. [a]) of the Highway Law insofar as that section requires a resolution of the Board of Supervisors in the case of a controlled access highway, subject to the limitation therein contained. If the facts in this case do not meet that requirement, then the relief cannot be granted.
The Federal Highway Act, the public hearing required under said act and the certification of economic considerations as mentioned by plaintiffs’ counsel, have no application to the issue here because they relate to procuring the grant of Federal funds. Any complaint with respect thereto is properly directed to the appropriate Federal agency, not to this court.
Since it is only because of a legislative enactment that the resolution of the Board of Supervisors is required with respect to a controlled access highway (thus supplying the basis for plaintiffs’ purported cause of action), it becomes important to know what, if any, is the legislative enactment defining the words “ controlled access highway.” Subdivision 2 of section 3 of the Highway Law gives the following definition: “ Controlled access highways are those state highways which are entirely or partly constructed, reconstructed or improved at a location where no public highway theretofore existed and to and from which the owners or occupants of abutting property or of any other persons shall have no right of access either as pedestrians, as operators of vehicles or in any other capacity, excepting at junctions of such highways with other public highways, and also excepting as such access may be reserved pursuant to the description and map of the property which has been or which *932 hereafter shall be acquired in accordance with this chapter for the purpose of such controlled access highways.” (Emphasis added.)
Obviously, if we are to give weight, as we must, to the pertinent provisions of section 30 as an edict of the Legislature, we must give equal weight to the pertinent provisions of section 3 which is similarly an edict of the same Legislature. Under section 30 only a controlled access highway requires the Supervisors’ resolution. Under section 3, a necessary element of a controlled access highway is that it shall be located ‘1 where no public highway theretofore existed ”. The evidence discloses and the court takes judicial notice that Sunrise Highway in Babylon and Islip Towns has existed for a number of years. It is my determination, therefore, that it is not in the category of a controlled access highway as defined in subdivision 2 of section 3 of the Highway Law of the State of New York, nor will it be such when the improvements planned by the Public Works "Department are completed. It follows that the provisions of section 30 (subd. 1, par. [a]) of the Highway Law relating to a controlled access highway do not apply and the resolution of the Board of Supervisors is not required.
The definitions of this form of highway proffered by the plaintiffs through their expert witness and by other proof including the words of the Public Roads Administration, are without weight in view of the specific definition contained in the State Highway Law, which must control for the reasons above expressed. 'Similarly, references to the proposed improvements by employees of the department as creating ‘ ‘ a controlled access highway” cannot affect the legal definition which has been established by statute.
There is left for disposition only the question of constitutionality. Plaintiffs contend that if the foregoing is the law, then it is violative of the Federal and New York State Constitutions. I cannot agree. The right of a sovereign body such as the State of New York to exercise the power of eminent domain in order to acquire land for road widening purposes has been determined by many decisions. The right to exercise such powers without controls by a political subdivision of the State is also well recognized. Where an agency of the State, ■ such as the Department of Public Works and its Superintendent are charged with the duty of constructing, reconstructing, improving and maintaining State roads and highways, with due regard to the safety of the traveling public, then the court may not substitute its judgment as to the administration of the duties of such agency for that of its Superintendent or authorized official, *933 unless the acts complained of clearly shock the judicial conscience. Here the preponderance of the evidence supports the valid purpose of the plans for improving the highway, both to serve and protect the public using said highway. Unfortunate as it is that some must be adversely affected, it is axiomatic that the welfare of the People as a whole must prevail.
Accordingly, I find for the defendants on the facts and the law, and direct the entry of a decree dismissing the complaint on the merits, without costs. Settle decree on notice. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.