Leonard Rubenferd, J.
By an order to show cause, dated August 6, 1971, returnable on August 27, 1971, plaintiff in this action for a declaratory judgment and permanent injunction moved for a preliminary injunction restraining the defendants from proceeding in any manner with the acquisition of approximately 9,000 acres of real property in connection with the expansion and development of Stewart Airport in Orange County. No temporary restraining order was contained in the order to show cause.
On August 12, 1971, a motion for similar relief — although based on somewhat different grounds — was denied by the United States District Court for the Southern District of New York (see opn. and order of Judge Marvin E. Franker in Town of New Windsor v. Ronan [S. D., N. Y. 1971], 71 Civ. 3062). The next day, on August 13, 1971, a map and description of some 8,657 acres of land adjoining Stewart Airport were filed in the office of the Clerk of Orange County. Defendants maintained and continue to maintain that the filing of the map vested title to the land in the State of New York.
Thereafter, plaintiff served an amended complaint containing 14 separate causes .of action and moved for additional preliminary injunctive relief which would annul the filing of the map and restore title to the prior owners pending the outcome of this action. The defendants cross-moved for dismissal of the *693 individual causes of action in the complaint, and of the entire complaint, for failure to state a cause of action.
The motions being now fully submitted to the court for determination, the cross motion for an order dismissing the complaint is granted and, since a preliminary injunction may not issue where the underlying action is dismissed (CPLR 6301; cf. Rodgers v. Rodgers, 30 A D 2d 548, 549; 12 CarmodyWait 2d, New York Practice, § 78:52), the motion for a preliminary injunction and related relief is denied.
I
Stewart Airport is located in the vicinity of Newburgh, New York. It was used as a United States Air Force Base from 1942 until 1970. In March of 1970, the defendant Metropolitan Transportation Authority (MTA) was permitted by the Department of Defense to lease and operate a large portion of the base as a general aviation airport. In July of 1970, MTA acquired title to some 1,590 acres of the 2,100 acre facility.
An Airport Development Task Force of the Federal Aviation Administration reported of Stewart Airport, in September of 1970, that: “ The airport is 55 miles away from New York City and located adjacent to the New York State Thruway and Route 184; the present acreage is 2,186 acres, with land, to the west and southwest which is uninhabited and which appears to be available for the requirements of an expanded facility. There are no insurmountable topographic or airspace problems if expansion were to be considered. The location, from a ground access viewpoint, is good. The only limiting factor is a lack of a high speed ground transportation system. In addition to the highway accessibility noted above, the airport lies close to the Brie Lackawanna rail right of way whose spurs connect the site with Newark, New Jersey, and can provide additional improved rail links with New York City proper. The airport itself has two runways, one 7,000 feet long and one 6.000 feet long, and is capable of handling medium range aircraft. The airport has a practical annual capacity. of about 160.000 operations under its present configuration. It is located in an area of rapidly growing population and could significantly relieve the existing metropolitan area airports. It has the potential of being developed as a major air carrier airport, as well as a cargo and freight facility. Its location indicates that it may present one of the last viable opportunities for additional major airport facilities in the area.” ¡
Seven months later, on April 26, 1971, the New York State ! Legislature passed ‘ An Act to authorize the establishment of 1 *694 an airport for the accommodation of domestic and international air travel and freight transport at Stewart Airport and the making of an appropriation therefor ” (L. 1971, eh. 472, § 1). "The act was amended on May 27, 1971 (L. 1971, ch. 473, § 1) and signed into law by the Governor on June 17,1971. Section 1 of the Stewart Airport Act, as amended, authorizes the MTA: “ to establish,- construct, expand, rehabilitate, improve, maintain, reconstruct and operate at Stewart airport, in the vicinity of Newburgh, New York, an airport for the accommodation of domestic and international air freight transport, general aviation and such other airport purposes for which there may be need from time to time. The sum of thirty million dollars ($30,000,000), or so much thereof as shall be necessary to accomplish the purposes herein designated is hereby appropriated * * * for such purposes * * * including the acquisition of real property or interests therein * * * If the need for the application to such purposes is not immediate, the right to possession of any land or interests therein thus acquired shall be transferred by the authority to a wholly owned subsidiary corporation of the authority specially created for the interim administration and management of such property. Such administration and management shall include the right to lease, but preference in such leasing shall be given to the application of the person owning such property immediately prior to its acquisition ”.
In a joint statement issued by Governor Rockefeller and members of the Legislature on May 18, 1971, it was pointed out that the acreage to be taken was ‘ ‘ needed for runway extension, facilities and a buffer zone ’ ’; that primary emphasis would be placed on a “ phased development of Stewart as an air cargo shipping center and general aviation facility ”; that other development of the airport would “ only be in response to need”; and that the detailed study, planning and development of the airport would be made in close co-operation with local officials and would be consistent with isound environmental standards and practices.
Later, in a memorandum filed with his approval of the Stewart Airport Act, the Governor noted that the New York Metropolitan region had been seeking a suitable site for the location of a majofi airport “ for more than twelve years ” and that the land then held by the MTA at Stewart Airport was inadequate to meet the growing aviation needs of the areaA much larger land area than 1,600 acres is needed for a major airport. For example, the new airport to serve the Dallas-Ft. Worth area is *695 some 18,000 acres. This hill will empower the MTA to purchase, using funds from the aviation portion of the 1967 Transportation Capital Facilities Bond Issue, additional land for the expansion contemplated and also to begin the orderly planning and development of Stewart as a major airport. The reserving of land for airport development purposes at this time will insure that the impact of an expanded Stewart Airport will have minimal adverse impact on the environment as noise buffer zones and other sound ecological protections can be easily incorporated into the planning. In addition, by moving now on the improvement, expansion and development of Stewart Airport while land in the area of the airport is largely undeveloped will mean minimal relocation of people and businesses as the airport development program moves ahead. Prompt action to expand the newly acquired .Stewart Airport will inconvenience the least number of people, have the least adverse impact on the environment and help insure the future job opportunities so essential for the well-being of the people of the Empire State.” (1ST. Y. Legis. Annual, 1971, p. 427).
On July 6,1971, MTA Chairman William J. Ponan announced the beginning of steps to acquire approximately 9,000 acres of land west of Stewart Airport. In a news release issued by the MTA concerning the announcement, it was noted that the legislative debates had emphasized an expectation that the bulk of the $30,000,000 appropriation ‘ would be invested in the early acquisition of additional land around the airport ”. The release went on to quote Chairman Ponan as saying, ‘ ‘ the Governor and the Legislature authorized .acquisition of the property now so that we can be assured of proper airport development which serves the economic needs of the Region and the State and, at the same time, provides maximum protection for the local community ”. But “ we wish to reassure those living in this area that the acquisition of property does not mean that people will be required to vacate their properties immediately. We believe that almost all of the people living, farming or doing business within the affected area will be able — if they wish — to stay for two years at the minimum ”.
This announcement by the MTA Chairman was soon followed by separate actions, first in the Federal court and now here, to obtain injunctions restraining the proposed acquisition.
n
In considering the motion to dismiss the complaint and the individual causes of action on the ground that they fail to state a cause of action, the court is mindful that a pleading challenged *696 for legal insufficiency must be liberally construed (CPLR 3026; Walkovszky v. Carlton, 18 N Y 2d 414, 419; Condon v. Associated Hosp. Serv., 287 N. Y. 411, 414; Wainright & Page v. Burr & McAuley, 272 N. Y. 130, 132). Upon such motion, the court accepts “ as true the material allegations of fact contained in the complaint and any reasonable inference that may be drawn therefrom” (Garvin v. Garvin, 306 N. Y. 118, 120; St. Regis Tribe of Mohawk Indians v. State of New York, 5 N Y 2d 24, 36) and if any cause of action can be spelled out from the facts alleged, the motion must be denied (Dulberg v. Mock, 1 N Y 2d 54; Foley v. D’Agostino, 21 A D 2d 60, 64-65). The court, however, does not assume the correctness of any legal conclusions drawn by the pleader nor the pleader’s interpretation of any statute involved (Kip v. New York & Harlem R. R. Co., 67 N. Y. 227, 230; Sleepy Hollow Val. Committee v. McMorran, 27 A D 2d 665; City of Albany v. McMorran, 16 A D 2d 1021, 1022; Cuglar v. Power Auth. of State of N. Y., 4 Misc 2d 879, 887, affd. 4 A D 2d 801, affid. 3 N Y 2d 1006).
The first and third causes of action alleged by the county have as their common theme an allegation that the appropriation of 8,657 acres of land by the defendants is invalid because it was effected before the defendants had completed any detailed study or master plan for the expansion, development and improvement of Stewart Airport.
The first cause of action alleges that “ the constitution of the State of New York and condemnation procedures set forth in section 1267 and 1267-a of the Public Authorities Law and section 30 of the Highway Law of the State of New York necessitate the formulation of a plan based upon facts establishing public necessity and a public purpose before such procedures may be validly and legally exercised ”; that “ MTA has made application for federal funds for a master plan study of Stewart Airport, which has been granted, and which will necessitate consultations and meetings with the County and other interested public bodies and citizens [but that] such study will not be completed for several months ”. The third cause of action alleges that in taking title to land without benefit of “ any factual .study or plan ’ ’ the defendants have acted without reasonableness, irrationally and in bad faith and “until the defendants have shown that all of the nine thousand acres of real property are required in furtherance of the purposes for which MTA was created, the taking of property beyond that shown to be necessary for the public use is constitutionally prohibited”. The county further alleges that it is the owner *697 of real property within the bounds of the lands appropriated by the defendants.
It is, of course, fundamental that private lands may be taken only for a public use or purpose and only when the lands are necessary for such public use or purpose. Here, the Legislature has authorized the acquisition of lands for the purposes of “ establish [ing], construct [ing and] expand [ing] an airport for the accommodation of domestic and international air travel and freight transport, general aviation and such other airport purposes for which there may be need from tímelo time ’ ’. (L. 1971, ch. 473, § 1.) Whether such purpose or use is public in character and whether the lands were in fact acquired for such use, are questions to be determined by the court (see, e.g., Fifth Ave. Coach Lines v. City of New York, 11 N Y 2d 342, 349; Denihan Enterprises v. O’Dwyer, 302 N. Y. 451). But at this stage in the history of aviation and public transportation, there can be no genuine doubt that the creation or expansion of an airport is a public purpose for which the power of eminent domain may be validly exercised (Hesse v. Rath, 249 N. Y. 436; General Municipal Law, §§ 350-357; 2-A Nichols, Eminent Domain, § 7.514). Nor is there any genuine issue with respect to whether the land taken by the defendants was taken for the purposes authorized by the Legislature. The complaint, the description and map referred to in the complaint, and the public pronouncements of the defendants referred to in the verification of the complaint, all indicate that the land was acquired for the purposes set forth in the Stewart Airport Acts. There is in fact no allegation in the -complaint that the land was acquired for some other purpose.
With respect to the “necessity” for taking 8,657 acres of land for the expansion of Stewart Airport, the role of the court is very limited. The power of eminent domain resides in the Legislature. It may be exercised by the Legislature or delegated by it to an appropriate officer -or agency (Pocantico Water Works Co. v. Bird, 130 N. Y. 249; Matter of Brown v. McMorran, 39 Misc 2d 716, 719) and it is not necessary that the precise boundaries of the land to be acquired be determined by the Legislature itself. It may “ in general terms delegate discretionary authority to its agency; and such delegation is not an abrogation -of legislative duties or functions. (Matter of Townsend, 39 N. Y. 171, 174; cf. Kaskel v. Impellitteri, 306 N. Y. 73.) ” (Cuglar v. Power Auth. of State of N. Y., 4 Misc 2d 879, 896, affd. 4 A D 2d 801, affd. 3 N Y 2d 1006, supra). Moreover, “ the necessity for an appropriation of lands for public *698 use is a legislative function, and the instrumentality in which it reposes such powers is the sole judge of the necessity, in lieu of any provision to the contrary ’ ’ (Cuglar v. Power Auth. of State of N. Y., supra, p. 896). The courts will not interfere unless there is a showing of bad faith or conduct which is irrational, baseless or palpably unreasonable (Cuglar v. Power Auth. of State of N. Y., supra, p. 897; Saso v. State of New York, 192 N. Y. S. 2d 272, 274).
The complaint herein alleges that the defendants acted unreasonably, irrationally and in bad faith — and failed to comply with the provisions of paragraphs (a) and (b) of subdivision 1 of section 30 of the Highway Law in that the defendants appropriated the lands before completing a master plan for the expansion, development or improvement of Stewart Airport. The court does not believe that these allegations are sufficient to set forth a cause of action.
In City of Albany v. McMorran (34 Misc 2d 304, 308, supra) a case accurately referred to in plaintiff’s brief as “ startlingly similar to the case at bar”, the Legislature appropriated $20,000,000 for the acquisition of real property ‘ ‘ in connection with the redevelopment and rehabilitation of1 the Capital City ’ ’ in Albany. The property was to be acquired by the Superintendent of Public Works ‘ ‘ in the manner prescribed by the provisions of section 30 of the highway law ” (City of Albany v. McMorran, supra, p. 308). The defendant in fact acquired 40 city blocks which had not been described in detail by the Legislature. The complaint alleged: ‘1 among other things that prior to the filing of said maps on March 27, 1962, defendant McMorran had formulated no plans for the layout or construction of State buildings, had made no appraisal of the parcels of real property affected, had made no determination concerning the cost of acquisition and neither sought nor received facts from any person or agency upon which to base his determination ; that the said filing deprived the owners of their real property far in excess of the amount of land reasonably and foresee-ably necessary; that the people and residents of the City of Albany have been and will be deprived of their peace, tranquility and the equal protection of the laws to which they are entitled; that said property is and will be used for a private purpose; that there are no specific plans for the development or public use of this property presently in existence; and that ‘ the defendant in causing, permitting or allowing the filing of said maps, knowingly acted in bad faith in that said filing constituted a mere naked act of power exercised without rational basis or *699 logical relationship to his public duty and authority, and was based upon a corrupt, unworthy, malicious and baseless motive, was irrational, unreasonable and not in the interest of the public ’ ”. (City of Albany v. McMorran, supra, p.,311.)
Special Term denied a motion to dismiss the complaint for failure to state a cause of action but the Appellate Division, Third Department, in reversing that determination, held that the “ allegations of the complaint are either legal conclusions without factual support or pertain to the exercise of powers delegated to the public official by the Legislature which are not • reviewable as here pleaded ” (City of Albany v. McMorran, 16 A D 2d 1021, 1022). The court believes that a similar conclusion must be reached with respect to the first and third causes of action herein. Neither the absence of detailed plans for the use of the lands (see, e.g., Cuglar v. Power Auth. of State of N. Y., 4 A D 2d 801, 802, affd. 3 N Y 2d 1006, supra) nor the fact that some of the lands may not be fully utilized until sometime in the future (see, e.g., City of Mt. Vernon v. East Hudson Parkway Auth., 45 Misc 2d 471, 478, affd. 23 A D 2d 849), provides a sufficient basis for invalidating the acquisition of the lands in question. As Judge Frankel put it: “ The State, concerned about a scarce resource (large tracts of accessible and relatively uninhabited land), is not less free to plan for contingencies than are other enterprises of smaller public moment. There is clear ground for a responsible judgment that the Stewart area is today ‘ one of the last viable ’ alternatives for jet airport facilities of the kind evidently required in the near future. As prices rise and options vanish, the State has power to act rationally upon probabilities if certainties are not available. The State may take more than it is positive it will need; it may, given the limits of human foresight, take land for which a need is reasonably predicted but which eventually proves unnecessary for its projected purpose. Cf. United States v. Bowman, 367 F. 2d 768, 770 (7th Cir. 1966); Chapman v. Public Utility Dist. No. 1 of Douglas Co., Wash., 367 F. 2d 163, 168 (9th Cir. 1966); Wilson v. United States, 350 F. 2d 901, 907 (10th Cir. 1965). See, also, Rindge Co. v. Los Angeles, supra, 262 U. S. at 707.” (Town of New Windsor v. Ronan [S. D., N. Y., 1971], 71 Civ. 3062, supra).
For its second cause of action the county alleges that the defendants have failed to comply with section 1267-a of the Public Authorities Law which requires that, as a condition precedent to the appropriation of real property “ for purposes other than a transportation facility ’ ’, the consent of the gov *700 erning body of the city, village or town in whiclji such real property is located must be obtained.
However, “ transportation facility ”, as used in section 1237-a, means “ any railroad, omnibus, marine or aviation facility * * * and any portion thereof and the rights, leaseholds or other interest therein together with routes, tracks, extensions, connections, parking lots, garages, warehouses, yards, storage yards, maintenance and repair shops, terminals, stations and other related facilities thereof”. (Public Authorities Law, § 1261, subd. 14.) It is clear that the lands acquired by the defendants were for purposes which fall within this broad definition notwithstanding the county’s conclusory allegation to the contrary. The failure of the defendants to obtain the consent' of the towns and villages in which the real property is located, therefore, does not invalidate the appropriation.
In its fourth cause of action the county alleges that it owns and operates the Orange County Airport located 2.6 miles from the western boundary of the lands appropriated by the defendants ; that because no master plan or study has been completed, neither the county nor MTA has any knowledge of the mannef and extent to which the Orange County Airport will be affected by the actions of MTA in expanding, improving or developing Stewart Airport; that in failing to consider the effects upon the Orange County Airport the defendants have acted recklessly, arbitrarily and in utter disregard of the property rights of the county; and that any master plan study made hy the Federal Aviation Authority or the defendants “must necessarily consider the effect on Orange County Airport”.
Reading this claim as liberally as possible, it nevertheless fails to state a cause of action. In the first place, there is no allegation or reason to believe that the mere acquisition of title to land by the MTA has or will affect the operation of the Orange County Airport. Secondly, there is no “ justiciable controversy ” with respect to the need for a master plan or study which will consider the impact of an expanded Stewart Airport upon the operations of the Orange County Airport. The county in fact alleges in its complaint that Federal funds for a master plan study of Stewart Airport have been granted to MTA and that such a study is now in progress although not yet completed. In addition, the MTA’s “ Stewart Airport Phased Outline of Study Elements” specifically provides for a study of effects upon the Orange County Airport. Finally, any allegations concerning the possible loss of property rights by the county in connection with the operation of the Orange County Airport *701 would seem to be highly speculative and premature at this time. In the event a taking does occur, the county may file a claim for compensation just as any other property owner (General Municipal Law, § 3; City of Albany v. State of New York, 28 N Y 2d 352, supra).
In its fifth cause of action the county alleges that section 1267-a of the Public Authorities Law is unconstitutional “in that it authorizes the taking of property from the County without due process of law in violation of Section 6 of Article I of the Mew York State Constitution.”
Section 1267-a of the Public Authorities Law provides that the Commissioner of Transportation, when requested by the MTA, may acquire such real property in the name of the State as the MTA determines is “ necessary, convenient or desirable to effectuate the purposes” set forth in title 11 of article 5 of the Public Authorities Law. The section further provides that the property is to be acquired and paid for “ all according to the procedure provided in section thirty of the highway law ”. The procedures provided in section 30 of the Highway Law, which are incorporated by reference into section 1267-a, have been held to be constitutional and not to deprive owners of appropriated property of their due process rights: ‘ ‘ Section 30 of Hew York’s Highway Law sets forth the condemnation procedures to be followed by the Commissioner. Condemnation maps are filed in the Office of the County Clerk of the county in which the property is located and in the Department of State. Upon filing with the County Clerk, title vests in the State. Hotice is then personally served on the former property owner who then may commence suit in the Court of Claims. If a former property owner remains on the land after the taking, the Commissioner must commence an eviction proceeding on 60 days notice. These procedures clearly meet the requirements of due process.” (Citizens Committee for Hudson Val. v. Volpe, 302 F. Supp. 1083, 1094 [S. D., N. Y., 1969], affd. 425 F. 2d 97 [2d Cir., 1970], cert. den. 400 U. S. 949 [1970]).
The absence of any requirement that notice be given the owners prior to the appropriation does not render the statute constitutionally infirm. All that is required with respect to notice is that the statute provide a sufficient ‘ ‘ opportunity to be heard on the issues of compensation and public use ” (Fifth Ave. Coach Lines v. City of New York, 11 N Y 2d 342, 348, supra). The provisions of section 30 of the Highway Law are adequate in this respect (cf. Citizens Committee for Hudson Val. v. Volpe, supra, p. 1094; Schroeder v. City of New York, 371 U. S. 208 [1962]).
*702 In its sixth cause of action the county alleges that the Stewart Airport Acts (L. 1971, chs. 472, 473) violate section 5 of article X of the New York State Constitution which provides that public corporations shall not be created except by special act ” of the New York Legislature. The county contends that the Stewart Airport Acts so enlarge the powers of MTA that they should be considered a new act of creation; that the Stewart Airport Acts are not special acts of the Legislature; that the MTA was created by a special act amending the Public Authorities Law which, in turn, was enacted so as to compile in one chapter of the consolidated laws, for the purpose of public convenience, the several acts in relation to public authorities; and that only an act specifically amending the Public Authorities Law may enlarge the powers of MTA.
In City of Rye v. Metropolitan Transp. Auth. (24 N Y 2d 627, 634) the Court of Appeals had occasion to rule on the meaning of “ special act ” as used in article X of the Constitution: “ The debates of the 1938 Convention indicate that the proliferation of public authorities after 1927 was the reason for the enactment of section 5 of article X * * * Abbott Low Moffat, who supported this, proposal, told the convention that its purpose was to require the Legislature to pass directly itself upon the establishment of each new authority, and to prevent the enactment of general laws pursuant to which a municipal corporation can itself create a corporation of the authority type ’. * * * Thus, the purpose was to prevent the Legislature from allowing the creation of public authorities in the manner in which, since 1846, it had been required to do with private corporations by a general statute, and require the Legislature itself to create them specifically by special act It becomes manifest from the convention discussion that what was intended to be accomplished was a requirement that the State Legislature itself create public corporations of the type described and that their creation not be left either to administrative officers or to local governments and that is what is meant by special act ’ in this context. As Mr. Moffat explained to the convention, it was the purpose of the framers of the section to see to it that the power to create an authority shall not be delegated’”.
It is clear from the foregoing that the Stewart Airport Act ” is a special act” within the meaning of section 5 of article X of the New York State Constitution and there is no conflict with that provision even if it be assumed that the Stewart Airport Act constituted an act of creation of a public authority.
*703 For its seventh cause of action the county alleges that “ the Stewart Airport Acts are statutes relating to the property, affairs and government ’ ’ of the county and the failure of the State Legislature to obtain the prior approval of the county executive and the Orange County Legislature violated the home rule powers conferred upon the county by the New York Constitution (art. IX, § 2, subd. [b], par. [1]).
It seems well settled, however, that a statute does not affect ‘ ‘ the property, affairs or government ” of a local government within the meaning of section 2 of article IX of the Constitution if its subject involves to “ a substantial degree a matter of State concern ’ ’ even ‘ ‘ though intermingled with it are concerns of the locality ” (Adler v. Deegan, 251 N. Y. 467, 491). The Stewart Airport Acts obviously involve matters of State concern and, therefore, the home rule provisions of the Constitution are inapplicable (cf. City of Rye v. Metropolitan Transp. Auth., 24 N Y 2d 627, 637, supra; Whalen v. Wagner, 4 N Y 2d 575; Bugeja v. City of New York, 24 A D 2d 151, affd. 17 N Y 2d 606).
In its eighth cause of action the county alleges that the Stewart Airport Acts, ‘ ‘ to the extent that they delegate to MTA powers of appropriation and condemnation of real property, are vague and contain no specific public purpose for which such powers are to be exercised, thereby violating Sections 6 and 7 of Article I of the New York State Constitution ”.
It appears from the memoranda submitted by the county that the Stewart Airport Acts are thought to be unconstitutionally vague, with respect to the location of the lands to be appropriated by the MTA, because the acts fail to “ specifically or by implication authorize the acquisition of land in the Towns of Newburgh, New Windsor, Hamptonburgh and Montgomery, or in the Village of Maybrook, or anywhere else for that matter ’ ’.
The court is unable to agree. The Stewart Airport Acts authorize the MTA “ to establish, construct [and] expand * # * at Stewart airport, in the vicinity of Newburgh, New York, an airport ” (L. 1971, ch. 473, § 1; emphasis added). As previously indicated, the precise boundaries of the land to be acquired need not be determined by the Legislature (Cuglar v. Power Auth. of State of N. Y., 4 Misc 2d 879, 897, affd. 4 A D 2d 801, affd. 3 N Y 2d 1006, supra). Here, the Legislature has sufficiently indicated the general location of the lands which the MTA in its discretion is authorized to acquire (cf. City of Albany v. McMorran, 16 A D 2d 1021, supra).
For its ninth cause of action the county alleges that the purpose of MTA, as expressed in subdivision 1 of section 1264 of *704 the Public Authorities Law, is ‘ the continuance, further development and improvement of commuter transportation and other services related thereto within the metropolitan commuter transportation district” (emphasis supplied); that the property in question was not acquired for any such purpose; and, therefore, that MTA in appropriating such property was acting ultra vires and without due process of law.
The difficulty with this proposition is that the Stewart Airport Act specifically authorized the MTA to acquire property for the very purposes the land was in fact acquired. Judge Fra-etkel disposed of the argument by commenting that ‘1 plaintiffs add to their more careful and substantial points a frivolous suggestion that MTA, specifically designated in the state statute, is proceeding ultra vires by acting thereunder ’ ’. (Town of New Windsor v. Ronan [S. D., N. Y., 1971], 71 Civ. 3062, n. 7.)
In its tenth, thirteenth and fourteenth causes of action the county alleges that the map and description filed by the defendants pursuant to section 30 of the Highway Law were illegal and invalid, and failed to vest title in the State, because the ‘ ‘ map and description contained and set forth only a perimeter or outline survey of the 8,657± acres of land in question and did not contain a delineation, survey or description of the hundreds of separate and individual parcels of land ” owned by various persons, corporations and other entities immediately prior to the filing.
Subdivision 3 of section 30 of the Highway Law provides that the appropriate official “ shall cause to be prepared an accurate description and map of any and all property” to be acquired. Subdivision 6 of section 30 provides that upon filing the description and map in the office of the County Clerk, “ title to such property shall be vested in the people of the state of New York ”.
The county contends that a description of any and all property requires that each individual parcel within the taking area must be shown on the appropriation map and separately set forth in the description and that a failure to do so deprives the owners of adequate notice of the alleged appropriation. The defendants maintain that the statute contains no such requirement ; that any and all of the property to be taken is contained within the perimeter which is shown accurately on the map and set forth by metes and bounds in the description; that lands have often been appropriated in this fashion (including, apparently, the 40-block parcel referred to [City of Albany v. McMorran, 34 Misc 2d 304, supra]); and that individual maps of each parcel will be prepared ‘ ‘ in connection with, among other things, *705 determining the compensation to which each former owner is entitled ”.
The filed map shows a corridor of land fanning out to the west of Stewart Airport for a distance of approximately six miles. The corridor is about one and one-half miles, in width at the point of contact with Stewart Airport and about three miles in width at its widest point located near the western end of the corridor.
The description sheet states that the acquisition is of “ all that tract or parcel of land with improvements thereon, if any, situate in the Towns of Newburgh, New Windsor, Hampton-burgh, and Montgomery, and in the Village of Maybrook, County of Orange, State of New York, bounded and described as follows ”. There is then a metes and bounds description of the perimeter which consists mainly of State highways, roads and the western boundary of Stewart Airport.
The description sheet further provides that there is excepted from this appropriation: (1) “ All public roads and highways within the limits of the above described tract or parcel of land ”; (2) Parcel “A” consisting of a Federal housing project described in a deed recorded “ in Liber 1453 at pages 529 to 538 (3) Parcel “ B ” consisting of certain lands of the Board of Education of Central School District No. 2 “ described by deed * * * in Liber 1315 at pages 309, 310 and 311 (4) Parcel “ C ” which are lands belonging to the MTA; (5) Parcel “ D ” which also belongs to the MTA; (6) “ Those lands of the City of New York consisting of the Northern Catskill Aqueduct and the right of way on which it is constructed. ’ ’; (7) “ All lands or interests in land held for public use by any person, corporation or governmental entity for any of the following purposes: the construction, re-construction, maintenance or operation of a facility or facilities for the transmission or distribution of electricity, of fluids or of gasses ”; and (8) “ Land used for cemetery purposes as follows: Parcel E being a portion of Liber 1319, Page 301, Parcel F being a portion of Liber 133 page 102, and Parcel Gr being a portion of Liber 1851 page 787, all as recorded in the Office of the Clerk, County of Orange. The intent is to except only lands now being used or dedicated for cemetery purposes. and the access thereto ”. With the possible exception of some items described in number “ (7) ” above, all of the excepted roads and parcels of land are indicated on the map and appear to consist of no more than 2 or 3% of the entire area within the perimeter.
*706 Now it is clear that the requirement of an “ accurate description and map of any and all property ’ ’ may not he taken lightly. The filing of the description and map determines, among other things, the time of taking and the point at which the amount of damages is to be measured and fixed (Highway Law, § 30, subd. 6; Chester Litho v. Palisades Int. Park Comm., 27 N Y 2d 323, 325). The Court of Appeals stated in Bell Tel. Co. of Buffalo v. Parker (187 N. Y. 299, 303), in a proceeding brought under the Condemnation Law which required “ a specific description of the property to be condemned, and its location, by metes and bounds with reasonable certainty ”, that: “The property or interest to be acquired must be ascertainable from the description thereof in the petition itself without reference to extrinsic facts. ‘ Without this the owner of land cannot know what portion of his lands is required; nor the commissioners what damages to appraise; nor the petitioner the precise boundaries of the land after the same is acquired. (Matter of N. Y. C. & H. R. R. R. Co., 70 N. Y. 191) Extreme accuracy should be exacted in proceedings of this character in order to safeguard the rights of all concerned. ‘ There must be no uncertainty in the description of the property to he taken nor in the degree of interest to be acquired ’. (Matter of Water Commissioners of Amsterdam, 96 N. Y 351) ”.
It has also been said that the description of the property to be acquired should be sufficiently definite to enable a surveyor to “ determine the starting point and plot the route ” (Porter v. State of New York, 5 Misc 2d 28, 34) and that the property “ should be described with that degree of accuracy that it can be readily located by any one familiar with the locality ” (City of Plattsburgh v. Kellogg, 254 App. Div. 455, 458).
It seems to the court, therefore, that at this stage of the proceedings, that is, prior to the determination of damages, the essential requirement of an adequate description and map with respect to the rights of the individual property owners is that it permit each owner to determine with reasonable certainty whether his property has been taken and to what extent. With this in mind the court believes that the map and description herein of the perimeter substantially complies with the requirements of due process and subdivision 3 of section 30 of the Highway Law — at least with respect to “99 44/100% ” of the land sought to be appropriated (United States v. Certain Lands Located in Towns of Highlands, Etc., 72 F. Supp. 749 [S. D., N. Y., 1947]; cf. Matter of Gillespie, 272 N. Y. 18, 22-23; People *707 ex rel. Hawver v. Commissioners of Highways of Redhook, 13 Wend. 310).
With the possible exception of owners who have title to some of the excepted parcels, every owner of property can tell with reasonable certainty, by reading the map and description, whether his property has been taken and how much of his property has been taken. This is so because in the case of almost every owner, all of his property within the perimeter has been taken. This may not be the case, however, with respect to the owners of the excepted cemeteries (excepted Parcels “ E ”, “ F ” and “ G ”)• It appears that only a portion of their lands within the perimeter have been acquired and there may be some question with respect to the precise amount taken. But whether the map and description of the property acquired from such owners is sufficient, the court need not now decide for there is nothing in the complaint which indicates that the county is the owner of those excepted parcels. A defective map of description is an “ irregularity ” which may be waived by the owner (cf. Burrows Paper Co. v. State of New York, 174 Misc. 850; 6 Nichols, Eminent Domain, §§ 24.64 and 25.4, subd. [1]) and apart from its status as property owner, the county lacks standing to sue (cf. Matter of County of Cayuga v. McHugh, 4 N Y 2d 609, 614-616; County of Albany v. Hooker, 204 N. Y. 1; City of Buffalo v. State Bd. of Equalization & Assessment, 26 A D 2d 213, 215).
Accordingly, the tenth, thirteenth and fourteenth causes of action are also dismissed. The county, however, is granted leave to replead those causes of action in the event it has title to excepted Parcels ‘ ‘ E ”, ‘ ‘ F ” or “G”.
In its eleventh and twelfth causes of action the county contends that the appropriation is invalid because the defendants failed to obtain the approval of Orange County as is allegedly required by paragraphs (a) and (b) of subdivision 1 of section 30 of the Highway Law.
It would seem, however, that approval of the county is not required where the land is appropriated for the construction or expansion of an airport: “ Pursuant to Highway Law, § 30(1) (a, b), the approval, by a county board of supervisors, of plans submitted to it by the State Superintendent of Transportation is necessary in only two instances. The first is where the construction, reconstruction or improvement of a controlled access highway is involved (Bennett v. McMorran, 38 Misc 2d 928, affd. 21 A D 2d 806, mot. for lv. to app. den. 15 N Y 2d 485). The second is where plans for the construction, reconstruction or *708 improvement of certain State Highways provide for the relocation of such highway or a portion thereof on a location which deviates from the location of the existing highway for a continuous length in excess of one mile as measured along the center line of the existing highway. The discussed approval is not required in relation to highways to be projected as through trunk routes and principally on new location ” (Opns. St. Comp., 68-1075; emphasis added).
The statute may not be construed as requiring county approval whenever a “ project is apt to have a major effect on a county ” as the plaintiff contends (cf. Bennett v. McMorran, 38 Misc 2d 928, affd. 21 A D 2d 806, mot. for lv. to app. den. 15 N Y 2d 485), and apart from the instances provided for in the Highway Law, the approval of a local governing body is required under section 1267-a of the Public Authorities Law only where the MTA acquires property “ for purposes other than a transportation facility ’
Ill
To sum up then, the motion for a preliminary injunction and for related relief is denied. The cross motion to dismiss the complaint and the individual causes of action contained therein is granted, but with leave to the plaintiff, if it be so advised, to replead the tenth, thirteenth and fourteenth causes of action in the event it has title to excepted Parcels “ E ”, “ F ” or “ G- ”, within 10 days after service of a copy of the order to be entered hereon with notice of entry.