Stewart Park v. Slater
No. 02-6272
December 12, 2003


Van Graafeiland, Senior Circuit Judge, dissenting in part:

On the whole, I agree with Judge Miner's analysis of the verbose, over-8000 page, record. However, I respectfully disagree with the following determinative statement that he makes:

> "Here it cannot be gainsaid that the Stewart Buffer Lands and the Crestview Lake property were established parklands. They have been used exclusively as parklands for almost thirty years since they were acquired pursuant to a series of management agreements."

When asked to pass judgment on acts that occurred decades prior to the making of the request, wisdom dictates that we give some consideration to pertinent judicial pronouncements made during the period at issue regarding the initial acquisition of the Stewart Properties. Two such pronouncements were Town of New Windsor v. Ronan, 329 F. Supp. 1286 (S.D.N.Y. 1971) and County of Orange v. Metropolitan Transportation Authority, 71 Misc.2d 691 (1971) aff'd mem, 39 A.D.2d 839 (1972). Unlike my two colleagues, I find the following excerpts from these two opinions persuasive, if not controlling.

## Town of New Windsor

> "The New York Legislature passed in April of this year, and amended in May, 'An Act to

1

authorize the establishment of an airport for the accommodation of domestic and international air travel and freight transport at Stewart airport and the making of an appropriation therefor.' Signed by the Governor in June, the Act as amended grants to MTA authority 'to establish, construct, expand, rehabilitate, improve, maintain, reconstruct and operate. Stewart airport * * * * an airport for the accommodation of domestic and international air freight transport, general aviation and such other airport purposes for which there may be need from time to time.'" Id. at 1288.

. . . .

"Land prices are rising.  The announced Stewart program seems to have enhanced this overall trend in the affected area.  The land involved is sparsely occupied at present.  It makes sense to take it and set it aside now for airport use rather than to wait for a time when homes and other buildings will need to be razed and other intervening interests will have to be bought.  In sum, the taking of title now has obvious justification in terms of prudence and fairness.  Especially when considered with the merits of the case, the opposed claims of hardship threatened hardship fall short of making a compelling case for plaintiffs.  Id. At 1292.

. . . .

### County of Orange

"In a joint statement issued by Governor Rockefeller and members of the Legislature on May 18, 1971, it was pointed out that the acreage to be taken was 'needed for runway extension, facilities and a buffer zone'; that primary emphasis would be placed on a 'phased development of Stewart as an air cargo shipping center and general aviation facility'; that other development of the airport would be made in close co-operation with local officials and would be consistent with sound environmental standards and practices." Id. at 694.

. . . .

> "It is, of course, fundamental that private lands may be taken only for a public use or purpose and only when the lands are necessary for such public use or purpose. Here, the Legislature has authorized the acquisition of lands for the purposes of 'establish[ing], construct[ing and] expand[ing] an airport for the accommodation of domestic and international air travel and freight transport, general aviation and such other airport purposes for which there may be need from time to time.' Whether such purpose or use is public in character and whether the lands were in fact acquired for such use, are questions to be determined by the court (see, e.g., Fifth Ave. Coach Lines v. City of New York, 11 N.Y. 2d 342, 349; Denihan v. Enterprises v. O'Dwyer, 302 N.Y. 451). But at this stage in the history of aviation and public transportation, there can be no genuine doubt that the creation or expansion of an airport is a public purpose for which the power of eminent domain may be validly exercised (Hesse v. Rath 249 N.Y. 436; General Municipal Law, §§ 350-357; 2-A Nichols, Eminent Domain, § 7.514). Nor is there any genuine issue with respect to whether the land taken by the defendants was taken for the purposes authorized by the Legislature. The complaint, the description and map referred to in the complaint, and the public pronouncements of the defendants referred to in the verification of the complaint, all indicate that the land was acquired for the purposes set forth in the Stewart Airports Acts. There is in fact no allegation in the complaint that the land was acquired for some other purpose." Id. at 697.

The Stewart Properties are located in the towns of Hamptonburgh, Montgomery, Newburgh, and New Windsor in Orange County, New York. Generally speaking, they are bordered by Interstate Route 84 to the north, NYS Route 17K to the northeast, the New York State Thruway (Interstate Route 87) to the east, NYS Route 207, Forrester Road and NYS Route 208 to the south, and

3

former Contrail lands to the west. The average north-south dimension of the site is approximately 2.5 miles and the average east-west dimension is approximately 6.5 miles.

Existing on-site development consists primarily of the airfield and related airport facilities, U.S. Military Academy facilities, an Air National Guard base and U.S. Department of Agriculture Animal Import and Export centers. There is also 180-acre industrial park in the northeast portion of the site, including a 70-acre U.S. Postal Service General Mail Facility and a cargo facility recently completed north of the runways.

The proposed action is to implement a plan that would allow for the development of portions of the Stewart Properties that would assist in promoting the utilization of the airport as a regional airport; to generate revenues for the State of New York and in doing so, reduce the state taxpayer's subsidy of Stewart's operation; to promote economic development in the area of the airport; accommodate projected regional commercial development demand in a sound and responsible manner; and return lost taxes and school districts costs by providing for aviation compatible development on State-owned property.

Despite the reams of factual and legal argument which have been discussed in this case, the determinative issue which I now address is relatively concise; viz. should section 4(f) have been applied? In the holding from which I now dissent, my two

4

colleagues answer this question in the affirmative.  I, however, agree with the district court which held to the contrary.

Section 4(f) provides in substance that the Secretary of Transportation may approve a transportation project requiring the use of publicly owned land of a public park or recreation area of significance "only if there is no prudent and feasible alternative to using that land; and the project includes all possible planning to minimize harm to the park or recreation area. . . ."  Plaintiff's concede that there never has been a formal designation of the land at issue as park or recreational land.  SPARC I, 225 F. Supp. 2d at 228.  Judge Miner states, however, with little citation of supportive authority, that "for almost thirty years, state and local governments have determined that the Stewart Buffer Lands and the Crestview Lake property were to be principally used as a park," and that "[t]his uninterrupted period of use cannot be characterized as interim."

This statement, I believe, misinterprets the basic intent of the fish and wildlife management program as set forth in #11-0501 of New York's Environmental Conservation Law, which states that its purpose is to obtain "on the privately owned or leased lands. . . . of the state practices of . . . wildlife management which will preserve and develop the . . . wildlife resources of the state and improve access to them for recreational purposes by the people of the state."  It also misapplies the provisions of

5

#11-0501 dealing with Cooperation Agreements, which states in paragraph c) that such an agreement "shall state the period during which it shall be in force and may provide for renewal. It may also provide for termination before the expiration of such period and for the conditions upon which and the manner in which any privilege of termination may be exercised."

The statement also misinterprets the meaning of the word "interim." This word is used in connection with airport transportation claims and generally obviates the need for section 4(f)definition. See, e.g., FAA Order 5050.4A Airport Environmental Handbook, Transportation Law.

The agreement at issue has constantly been described as "interim." (JA 1962, 1988, 2037, 2413.) Indeed, the plaintiffs have clearly recognized the terminable or interim nature of the cooperation agreements. For example, Plaintiff-Appellant, Orange County Federation of Sportsmen's Clubs, Incorporated, responding to the 1994 Solicitation of Interest, used the following illustrative statements, "ON BEHALF OF THE SPORTSMEN OF THIS COUNTY, THE FEDERATION STRONGLY RECOMMENDS THAT THE EXISTING INTERIM USES, SUCH AS, BUT NOT LIMITED TO, HUNTING, FISHING, TRAPPING, BIRDING, BIKING & HIKING ON STEWART PROPERTIES BE CONTINUED IN PERPETUITY."

. . . .

"THE SPORTSMEN PROPOSE PERMANENCY TO THE INTERIM RECREATIONAL USES AT STEWART, AND THE DEDICATE THE 6,500 ACES AT STEWART FOREVER WILD."

. . . .

This request was, of course, not honored. This fact gives added significance to FAA Order 5050.4A of the Airport Environmental Handbook, which provides that where property is owned by and designated for use by a transportation agency and a park or recreation use of the land is being made only on an interim basis, a section 4(f)ruling ordinarily is not required. We are left with the proposition that the use of the land was made only on an interim basis, and section 4(f) does not apply to temporary use. See Collin County, Tex. v. Homeowners eminent, 716 F.Supp. 953, 972 (N.D. Tex 1989).

Moreover, all of this underscores the point that we are not required to determine if the decision by the Federal Highway Administration not to apply a section 4(f) analysis is correct in our eyes. We need only determine that its decision is reasonable. See SPARC I, 225 F. Supp. 2d at 227. Given the fact that the land in question was acquired for transportation purposes, was always intended to be used for transportation purposes, and was only transferred on an interim basis with a termination provision to realize this intent, the decision of the Federal Highway Administration was eminently reasonable.

7

When the decision to create and enlarge Stewart Airport was made, hundreds of residents were evicted from the property involved. This was not intended for the benefit of hunters and other recreationists. However, conversion to airport use could not be completed overnight. Permissive interim use by recreationists did not accomplish what never was intended.

I would affirm the district court's holding in total.